Schmiedeke, Respondent, vs. Four Wheel Drive Auto Company and another (Industrial Commission, imp.), Appellants.

*March 11—April 5, 1927.*

*Workmen's compensation: Services incidental to employment: Salesman using automobile in territory: Injury sustained in automobile accident while returning to employer's office.*

1. Where a salesman travels by automobile, injuries received by him in such travel grow out of and are incidental to his employment within the meaning of the workmen's compensation act. p. 577.

2. On an appeal from an award of the industrial commission the court cannot disturb a finding of the commission on a question of fact made in a proceeding under the compensation act where there is any evidence to support it. p. 578.

Schmiedeke v. Four Wheel Drive Auto Co. 192 Wis. 574.

3. A salesman traveling by automobile, who while returning to his employer's office pursuant to instructions was injured in an automobile accident, is *held* as a matter of law to have been within the scope of his employment; and the evidence is *held* not to show that the salesman was intoxicated. p. 579.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Affirmed.*

Action to review an award of the *Industrial Commission.* On the 13th day of October, 1924, one A. W. Schmiedeke was and for some time prior thereto had been in the employ of the *Four Wheel Drive Auto Company* of Clintonville, Wisconsin, as one of its traveling salesmen. He was allotted certain territory in Northern Wisconsin, and it was his duty to travel that territory and to make sales of auto trucks manufactured by the employer. He traveled by auto provided by himself.

It appears that on Monday, October 13th, he left Clintonville and traveled north into his territory. It seems that during the week he made his headquarters at Pelican Lake. Just what his activities were during the week are not made clear. He did not make customary daily reports to the company. A number of witnesses testified to having seen him at and in the vicinity of Pelican Lake. But the testimony of such witnesses accounts for his activities for very brief periods of time during the week. There is some evidence from which it may be inferred that during the week he was devoting a portion of his time at least to promoting sales of real estate in the vicinity of Pelican Lake. However, we do not regard it as very material whether he was steadily engaged in promoting his employer's business during the week.

The evidence does show, with great certainty, that Schmiedeke was at Crandon on Friday and Saturday, about twenty miles from Pelican Lake, endeavoring to consummate the sale of a truck to the city of Crandon, and during such

days interviewed various aldermen of the city of Crandon. As late as 4 o'clock Saturday afternoon he interviewed an alderman of that city. His presence is not accounted for from that time until 10 o'clock Sunday morning, when he was seen at Pelican Lake. The record is silent concerning his whereabouts or activities from that time until Sunday evening, when he was again seen at Pelican Lake. At 7 o'clock Sunday evening he called at a garage in Pelican Lake and visited with the proprietor of the garage until late in the evening. He told the proprietor of the garage that he had to go back to Clintonville that night. As the proprietor of the garage contemplated taking the train at Pelican Lake and going to Green Bay that night for the purpose of taking a train to Detroit, Schmiedeke urged him to go to Clintonville with him and take a bus from Clintonville to Green Bay the following morning. However, this arrangement was not acceded to. Around 10 o'clock in the evening Schmiedeke started from Pelican Lake to Clintonville, driving his Ford coupé. We next hear of his presence at Elcho, a town about six miles distant from Pelican Lake, between 11 and 12 o'clock at night. He was having trouble starting his car. One Frank Sinkler came to his assistance and started the car without difficulty. Schmiedeke told him he was going to Clintonville and asked him to drive him to Clintonville. Sinkler urged him to stay at Elcho and not attempt to drive to Clintonville, but Schmiedeke insisted that it was necessary for him to proceed to Clintonville. Finally Sinkler consented to drive him as far as Antigo. Just before reaching Antigo, while Sinkler was driving, the car overturned and Schmiedeke sustained serious injuries. He was taken to the hospital at Antigo and died in a few days from traumatic pneumonia. His widow made claim for compensation. The *Industrial Commission* found that at the time of the injury Schmiedeke was acting without the scope of his employment and denied compensation. The

circuit court vacated and set aside the order of the *Industrial Commission* and remanded the record to the *Commission* with directions to make an award in favor of the widow. From that judgment the employer and the insurance carrier bring this appeal.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondent *Schmiedeke* there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

For the *Industrial Commission* there was a memorandum by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

OWEN, J. That the relation of employer and employee between Schmiedeke and the *Four Wheel Drive Auto Company* existed by reason of the contract of employment, and that both were subject to the provisions of the workmen's compensation act, is conceded.

We take it to be well settled that the risks of automobile travel constitute a hazard growing out of and incidental to the employment of a salesman traveling by automobile. Such is the effect of the holdings in *Schroeder & Daly Co. v. Industrial Comm.* 169 Wis. 567, 173 N. W. 328, and *U. S. Cas. Co. v. Superior H. Co.* 175 Wis. 162, 184 N. W. 694, that street hazards to which ordinary salesmen on foot are subjected are hazards peculiar to the employment. Accidents of this kind have almost universally been held to be compensable. *Capital P. Co. v. Conner,* 81 Ind. App. 545, 144 N. E. 474; *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682, 118 S. E. 786; *Cook's Case,* 243 Mass. 572, 137 N. E. 733; *Industrial Comm. v. Pueblo Auto Co.* 71 Colo. 424, 207 Pac. 479; *Empire H. & A. Ins. Co. v. Purcell,* 76 Ind. App. 551, 132 N. E. 664. Appellants do

not question the correctness of the decisions in *Schroeder &*
*Daly Co. v. Industrial Comm.* 169 Wis. 567, 173 N. W. 328,
and *U. S. Cas. Co. v. Superior H. Co.* 175 Wis. 162, 184
N. W. 694, but they say that in all such cases it is incumbent
upon the applicant to show that at the time of the accident
the employee was engaged in the master's business.   They
contend that the evidence in this case justifies the finding of
the *Commission* that at the time of the accident Schmiedeke
was not within the scope of his employment.   That we con-
ceive to be the only question calling for our consideration.
We approach it conscious of the fact that if it be a question
of fact and there is any evidence to support the finding of
the *Commission,* such finding cannot be disturbed.

It is an undisputed fact that Schmiedeke left Clintonville
Monday morning for the purpose of canvassing his terri-
tory; that he left under instructions from his employer to
be at the office of the employer the following Monday morn-
ing for the purpose of accompanying the sales manager of
the employer to Ironwood, Michigan, on the business of the
company.   His return to Clintonville was in obedience to
these instructions.   It may be that during the week he had
not been attentive to the employer's business.   It may be
that at times he was in the prosecution of his own business.
However this may be, the record establishes the fact with-
out controversy that at least a period of his time was devoted
to the business of his employer.   It cannot be disputed that
the trip was undertaken for the purpose of promoting the
interest of the employer.   It cannot be denied that the trip
contemplated a departure from Clintonville and a return to
Clintonville.   Even though he had departed from the em-
ployer's business at times during the week, the most that
can be said is that he was acting indiscriminately in the
prosecution of his own business and that of his employer.
Certainly he was engaged in the employer's business on Fri-
day and Saturday.   In obedience to the employer's instruc-

tions he was to be at the office in Clintonville Monday morning. The time of making the trip was unimportant. It seems apparent that, whenever the trip was undertaken, he was clearly within the scope of his master's employment while on his return. The trip for the week was an entity. It included going and coming. Even though at times during the week he departed from the scope of his employment, upon his return trip to Clintonville for the purpose of reporting to the office pursuant to his instructions he was again within the scope of his employment.

A contention is made that the deceased was intoxicated at the time of the accident and had been on a "spree." The *Industrial Commission* made no such finding, and the contention is based on circumstances which give rise only to a suspicion that such might have been the case. It is based upon the testimony of witnesses who saw and talked with Schmiedeke Sunday evening. These witnesses, however, testified that he did not appear to be intoxicated, that they did not see him take a drink, and that they did not smell liquor on his breath. It seems unnecessary for us to consider the case upon the assumption that Schmiedeke was intoxicated at the time of the accident.

We hold as a matter of law that the deceased was within the scope of his employment at the time of the accident, and that the award of the *Commission* was properly vacated and set aside by the circuit court.

*By the Court.*—Judgment affirmed.