BOHNSACK, Appellant, vs. HUSON-ZIEGLER COMPANY, INC., and others, Respondents.

*May 9—June 6, 1933.*

For the appellant there was a brief by *Buchen & Federer* of Sheboygan, and oral argument by *G. W. Buchen.*

For the respondents there was a brief by *Oscar L. Wolters* of Sheboygan and *J. H. Regan* of Milwaukee, and oral argument by *Mr. Wolters.*

FAIRCHILD, J.   A truck owned by respondent Huson-Ziegler Company was being driven by Ervin Le Mahieu at the time the appellant sustained his injuries.   The circum-

stances under which the truck was in Le Mahieu's custody determine whether or not the appellant can hold respondent responsible for the damages appellant sustained.

Respondent Huson-Ziegler Company, Inc., conducts a grocery store in Plymouth, Wisconsin, and Le Mahieu acted as its delivery boy. The appellant, an employee of the city of Plymouth, in the course of his employment was at the time of his injury being taken to a place where he was to work. Le Mahieu was returning to the store of his employer from his home, where he had driven with the truck for the purpose of eating his noonday meal. The question at issue is, Was Le Mahieu transacting business for his employer? Can it be said, under the circumstances to be detailed, that Le Mahieu was at the time doing any act or thing within the scope of his employment or for the benefit of his employer? The testimony shows that Le Mahieu left the store between 12 and 12:30 o'clock for the purpose of going to his home for dinner. When he drove away from the store he was accompanied by Mr. Ziegler, the president of the employer company, who was going to his own home for dinner. The practice of Le Mahieu's using the machine to go to his dinner and return to the store existed to such an extent that there can be no question but that the employer permitted such use when it seemed to suit the convenience of Le Mahieu. We do not consider the fact of any determining value that Mr. Ziegler carried with him some merchandise which he was taking home, for, after leaving Ziegler at his home between Main street and Western avenue on Pleasant street, Le Mahieu had no orders for deliveries and no purpose for which he was using the truck except for his own convenience. Thereafter he drove in a direction away from his employer's place of business a half a block north to Western avenue, a block west to Factory street, a block northerly to Schwartz street, and then a distance of more than two blocks to a street or road where he turned again in a northerly direction and drove for more

than a block, turned then to the east, crossing the railroad tracks and traveling a considerable distance to Milwaukee street, where, he testified, he turned to the south driving several blocks to Forest street, turning thence on Forest street to the east and driving to his home, which was between Smith street and Stafford street. After eating his dinner he started to return to the store, going south on Stafford street. The collision occurred at the corner where Stafford intersects Elizabeth street.

The practice of the Huson-Ziegler Company was to have two deliveries in the morning and two in the afternoon. These were in charge of Le Mahieu. On the day in question the two morning deliveries had been completed and he was at the store when the time arrived for him to go to his dinner, so that under the contract of employment there was nothing to do except to attend to his own affairs until one o'clock. The fact is, as testified to by Le Mahieu, that he always completed his deliveries before going to dinner and that his noon hour was not interfered with. The rule recognized in this state as governing in cases of this kind was discussed in the recent case of *Barragar v. Industrial Comm.* 205 Wis. 550, 238 N. W. 368, and in that case the following statement of the rule from *Matter of Marks v. Gray,* 251 N. Y. 90, 167 N. E. 181, was approved:

"If the work of the employee creates the necessity for travel, he is in the course of his employment though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

With this standard in mind the recital of the facts concerning this noonday trip of Le Mahieu compels the conclusion reached by the trial court. It is apparent that the

journey would have gone forward if the officer of the employing corporation had not ridden as far as his home with the driver, who was at the time on his way to his dinner. Certainly the use of the machine, after Ziegler had dismounted, was in the business of or for the purpose of the driver. It cannot be said that Le Mahieu was then engaged in any business for his employer and consequently the employer is not liable for any negligent acts of which the employee may have been guilty while so devoting his time to his own purpose. This result is supported by the doctrine of the cases of *Geldnich v. Burg,* 202 Wis. 209, 231 N. W. 624; *Barragar v. Industrial Comm., supra; Ohrmund v. Industrial Comm.* 211 Wis. 153, 246 N. W. 589. The facts in this case distinguish it from the case of *Eckel v. Richter,* 191 Wis. 409, 211 N. W. 158, where the driver had not deviated at all from the proper course in returning from delivering goods sold by his employer.

There is a claim that the Milwaukee Auto Insurance Company is liable because the policy covered the operation of the truck, but the policy contains a provision that the insurer shall not be liable unless the automobile is used only for commercial purposes in the business of the assured.

It being impossible under the facts in this case to escape the conclusion that the driver of the truck was not on his employer's business at all at the time of the accident but on his own business, the insurance carrier is not involved in the matter. The relation which existed between Le Mahieu and his employer was such that there can be no claim of an obligation on the part of the employer to transport Le Mahieu from his home to which he had gone for his dinner to the store where he was to conduct his work after his return. He had a specified time for his noonday meal, and there was no use, so far as the employer was concerned, for the truck until Le Mahieu returned to the store. There were fixed hours for regular deliveries and the arrangement was such that no interference occurred with the driver's regular

noon hour. The conclusion reached by the trial court that, on the undisputed evidence, at the time of the collision the car was not being operated for any commercial purpose of the Huson-Ziegler Company, Inc., must be sustained. *Drewek v. Milwaukee Auto. Ins. Co.* 207 Wis. 445, 240 N. W. 881.

*By the Court.*—Judgment affirmed.