MERCEDES VIGIO, Plaintiff and Appellee, *v.* SEVERIANO CARTAGENA RODRÍGUEZ ET AL., Defendants and Appellants.

No. 10097. Argued June 1, 1950.—Decided July 6, 1950.

*Juan Enrique Géigel* and *Guillermo Silva* for appellants. *Guillermo Bauzá* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

While Mercedes Vigio was crossing a street in Santurce, she was struck and injured by a bicycle which was being operated by Severiano Cartagena Rodríguez. She sued Cartagena and his three co-defendants in the Tribunal of the District of San Juan for damages. She alleged that the latter were liable because the accident occurred while Cartagena was riding the bicycle within the scope of his employment by the co-defendants as the messenger of a grocery store owned and operated by them. After a trial on the merits, the lower court entered judgment in favor of the plaintiff for $3,290 plus attorney's fees of $300.

On appeal, the only assignment is that the district court erred in holding that at the time of the accident Cartagena was acting within the scope of his employment as a messenger of the grocery store, thereby making his co-defendants, the owners of the store, liable for the injuries inflicted on the plaintiff when she was struck by the bicycle which Cartagena was riding.

The lower court, in its findings of fact, stated that the accident occurred at 12:05 in the afternoon of a weekday and that at the time Cartagena "was riding to his house on the bicycle he used to deliver, as a messenger, provisions to the clients of the 'Colmado Celis', belonging to the co-defendants, Manuel Hernández, Francisco Hernández and Ángel Hernández, which he was using that day with the permission and consent of the owners of the grocery store in order to go home for lunch and also to carry some provisions he had bought at 'Colmado Celis'." On the basis of this finding of fact, the lower court stated in its conclusions of law that at the time of the accident Cartagena was acting within the scope of his employment, rendering his co-defendants liable. The only case cited by the lower court in support of this conclusion was *Ford* v. *Reinoehl*, 182 A. 120 (Pa., 1935).

There is no dispute that the bicycle belonged to the owners of the store and that Cartagena was employed by them to use it to deliver provisions purchased at the store. "The presumption therefore is that at the time of the accident [Cartagena] was acting within the scope of his employment. *Morales* v. *Delia Mejías, Inc.*, 63 P.R.R. 672. But this presumption could be controverted by testimony. *Graniela* v. *Yolande, Inc.*, 65 P.R.R. 100, 194." *Acosta* v. *Crespo*, 70 P.R.R. 223, 231.

The district court, on the basis of uncontradicted testimony as to this point, found that Cartagena, with the consent of one of his employers, on this particular occasion was using the bicycle to go home to lunch. But this was not pursuant to any contract to furnish him such transportation. On the contrary, the testimony was that on this and several other occasions the bicycle had been borrowed, with the consent of the employer, for this purpose. We have held that, under § 1803 of the Civil Code, 1930 ed., an employee is not acting within the scope of his employment when he is driving home from work in a vehicle belonging to the employer which is being used with the latter's consent, in the absence of a

contract between them whereby the employer furnishes such transportation. *Díaz* v. *Rodríguez*, 69 P.R.R. 495.

■ The exact question as to using a vehicle belonging to the employer to go home to lunch has not yet been decided in this jurisdiction. The weight of authority, with which we agree, supports the rule that if the employee is merely going to his meal on his own time, in his employer's automobile, for his own convenience, he is not acting within the scope of his employment. But under some circumstances the rule is to the contrary. For example, "if a driver is permitted to drive the master's automobile to and from his meals for the purpose of enabling him to reach his work earlier, or where such travel is combined with his master's business ... his negligent acts in driving to and from his meals" are within the scope of his employment. 5 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3042, pp. 201–2; 1 Agency, Restatement § 229, Comment, p. 512 and § 236; Prosser on Torts, pp. 475–8; Annotations, 122 A.L.R. 858, 878; 80 A.L.R. 725, 732; 68 A.L.R. 1051, 1058; 45 A.L.R. 477, 490; 22 A.L.R. 1397, 1420; *Baker Driveaway Co.* v. *Clark*, 162 F. 2d 181 (C. A. 4, 1947); *Brown* v. *Bond*, 1 So. 2d 794 (Miss., 1941); *Wilson* v. *Deegan's Adm'r.*, 139 S.W.2d 58 (Ky., 1940); *Kish* v. *California State Automobile Ass'n*, 212 P. 27 (Calif., 1922).

In the instant case there was no testimony, nor did the lower court find, that the employer furnished the bicycle to enable Cartagena to return to work earlier. Rather the testimony was that the store was closed from 12 to 2 p. m.; that no deliveries were effected during that period; that normally the bicycle remained in the closed store during the lunch period; and that, insofar as the time factor alone was involved, consent to use the bicycle was given on this particular occasion because Cartagena asked to borrow it "In order to arrive home early". As we have seen, furnishing the bicycle to enable the employee to return to work earlier would have made the employer liable. But getting home

early and returning at the regular hour of 2 p. m. was solely for the convenience of the employee. Since the use of the bicycle served no purpose of the employer, it was not operated within the scope of employment. *Miller* v. *Hoefgen*, 183 P. (2) 850 (N.M., 1947); *Bohnsack* v. *Huson-Ziegler Co.*, 248 N.W. 764 (Wis., 1933).

■ A closer question is presented under the finding of the lower court that, in addition to going home to lunch, Cartagena was also carrying home a package of provisions he had bought for his own use. Cartagena testified that "I went on the bicycle because I had a regular purchase and when I have a regular purchase, I take it on the bicycle"; that his friends generally take him home, but on this occasion he did not wait for them because "it was a quite large purchase" which "was not allowed" on the bus. One of the codefendants also testified that when Cartagena borrowed the bicycle, "he [Cartagena] told me that he had to carry a package."

We cannot agree that merely because, as an incidental part of his borrowing the bicycle to go home to lunch, Cartagena also took home some provisions he had bought for himself at the store, he must be considered as acting within the scope of his employment. It is true that the store sold both over the counter and by delivery. But the testimony was that no deliveries were normally made between 12 and 2 p. m. There is nothing in the case to indicate that because of special circumstances the owners of the store deviated from this rule and ordered Cartagena, for the benefit and convenience at least in part of the employer, to deliver his own provisions to himself during the lunch period. On the contrary, the testimony was that Cartagena asked for permission to borrow the bicycle. If he had been using the bicycle for purposes of the employer, no such permission would have been necessary: he always used the bicycle as a matter of course whenever he effected a delivery on behalf of the store. We cannot hold merely because Cartagena was

incidentally carrying his provisions home from the store when he went home. for lunch that he was thereby serving some purpose of his employer. *Cado* v. *Many*, 180 So. 185 (La., 1938). *Cf. Eckel* v. *Richter*, 211 N. W. 158 Wis., 1926).[1]

In view of the foregoing, we conclude as a matter of law that Cartagena was not within the scope of his employment when he struck the plaintiff while operating a bicycle belonging to his employers, the three co-defendants. Accordingly, the judgment in favor of the plaintiff will be reversed as to the latter and affirmed as to Cartagena.

---

[1] The only case cited by the lower court, *Ford* v. *Reinoehl, supra,* is clearly inapplicable. In that case, although the employee was going home to have supper and was taking some butter home, he was at the same time on a trip for the employer's purposes. The court held at p. 123 of the *Ford* case that since his trip home did not involve any departure from the line of travel that he otherwise would have pursued for the employer, the employee was not engaged in an independent journey of his own. On the other hand, as we have seen, Cartagena was on an independent journey of his own.