MERCEDES VIGIO, demandante y apelada, *v.* SEVERIANO CARTAGENA RODRÍGUEZ y MANUEL, FRANCISCO y ÁNGEL HERNÁNDEZ, demandados y apelantes.

Núm. 10097.—*Sometido:* Junio 1, 1950. *Resuelto:* Julio 6, 1950.

*Juan Enrique Géigel* y *Guillermo Silva,* abogados de los apelantes; *Guillermo Bauzá,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Mientras Mercedes Vigio cruzaba una calle en Santurce, fué arrollada y lesionada por una bicicleta que manejaba Severiano Cartagena Rodríguez. Radicó demanda contra Cartagena y sus tres codemandados en el Tribunal del Distrito de San Juan, reclamándoles daños y perjuicios. Alegó

que los últimos eran responsables porque el accidente ocurrió mientras Cartagena manejaba la bicicleta actuando dentro de las atribuciones de su empleo como mensajero de un colmado propiedad de los codemandados. Celebrado el juicio en los méritos, la corte inferior dictó sentencia a favor de la demandante, concediéndole $3,290, más $300 para honorarios de abogados.

En apelación, el único error señalado es que la corte de distrito erró al resolver que al momento del accidente, Cartagena estaba actuando dentro de las atribuciones de su empleo como mensajero del colmado, y como consecuencia sus codemandados, los dueños del establecimiento, eran responsables por las lesiones ocasionadas a la demandante, cuando fué arrollada por la bicicleta que Cartagena manejaba.

La corte inferior expresó en sus conclusiones de hecho que el accidente ocurrió a las 12:05 de la tarde de un día de semana y que en ese momento Cartagena "se dirigía a su casa en la bicicleta que utilizaba para repartir, como mensajero, provisiones a los clientes del 'Colmado Celis', perteneciente a los codemandados Manuel Hernández, Francisco Hernández y Ángel Hernández, la cual utilizaba ese día con el permiso y consentimiento de los dueños del colmado para trasladarse a su casa con el objeto de almorzar y además para llevar unas provisiones que había comprado en el propio 'Colmado Celis'." A base de estas conclusiones de hecho, la corte inferior manifestó en sus conclusiones de derecho que cuando ocurrió el accidente, Cartagena estaba actuando dentro de las atribuciones de su empleo, y resolvió que los codemandados eran responsables. El único caso citado por la corte inferior para sostener sus conclusiones fué *Ford* v. *Reinoehl*, 182 A. 120 (Pa., 1935).

No existe controversia en cuanto a que la bicicleta pertenecía a los dueños del colmado y que Cartagena era empleado de éstos para distribuir provisiones compradas en el mismo. "La presunción es por tanto que al momento del accidente [Cartagena] estaba actuando dentro de las atribuciones de

su empleo. *Morales* v. *Delia Mejías, Inc.*, 63 D.P.R. 700. Pero esta presunción puede ser controvertida mediante prueba. *Graniela* v. *Yolande, Inc.*, 65 D.P.R. 107, 111." *Acosta* v. *Crespo*, 70 D.P.R. 239, 248.

El tribunal de distrito, a base de la prueba incontrovertida sobre este punto, resolvió que Cartagena, con el consentimiento de uno de sus patronos, en esta ocasión específica, usaba la bicicleta para ir a su casa a almorzar. Pero esto no era de conformidad con algún contrato para proporcionarle a aquél tal transportación. Por el contrario, la prueba demostró que en ésta y en varias otras ocasiones la bicicleta le había sido prestada, con el consentimiento del patrono, para dichos fines. Hemos resuelto que, bajo el artículo 1803 del Código Civil, ed. 1930, un empleado no está actuando dentro de las atribuciones de su empleo, cuando se traslada desde el trabajo a su hogar, en un vehículo perteneciente al patrono, que está siendo usado con el consentimiento de éste, en ausencia de un contrato entre ellos en el cual el patrono venga obligado a proporcionar a su empleado tal transportación. *Díaz* v. *Rodríguez*, 69 D.P.R. 533.

La cuestión específica en cuanto al uso de un vehículo perteneciente al patrono para que un empleado vaya a almorzar a su casa, no ha sido aún resuelta en esta jurisdicción. El peso de las autoridades, con las cuales estamos conformes, sostienen la regla de que si el empleado meramente se dirige a comer durante la hora concedídale para ello, en el automóvil de su patrono para su propia conveniencia, no actúa dentro de las atribuciones de su empleo. Pero bajo ciertas circunstancias la regla es todo lo contrario. Por ejemplo, "si a un conductor le es permitido usar el automóvil de su patrono para ir a comer, con el propósito de que regrese más temprano a su trabajo, o cuando ese viaje está combinado con el negocio de su patrono . . . sus actos de negligencia ocasionados en ir y venir" caen dentro de las atribuciones de su empleo. 5 Blashfield, *Cyclopedia of Automobile Law and Practice*, Ed. Permanente, sec. 3042, págs. 201–2; 1 *Agency*,

*Restatement* sec. 229, *Comment d*, pág. 512 y sec. 236; Prosser *on Torts*, págs. 475–8; *Annotations*, 122 A.L.R. 858, 878; 80 A.L.R. 725, 732; 68 A.L.R. 1051, 1058; 45 A.L.R. 477, 490; 22 A.L.R. 1397, 1420; *Baker Driveaway Co.* v. *Clark*, 162 F.2d 181 (C.C.A. 4, 1947); *Brown* v. *Bond*, 1 So.2d 794 (Miss., 1941); *Wilson* v. *Deegan's Adm'r*, 139 S.W.2d 58 (Ky., 1940); *Kish* v. *California State Automobile Ass'n*, 212 P. 27 (Calif., 1922).

En el presente caso no hubo prueba y tampoco lo resolvió la corte inferior, de que el patrono suministrara la bicicleta para permitirle a Cartagena regresar más pronto a su trabajo. Más bien, la prueba demostró que el negocio se cerraba de 12 a 2 p.m.; que no se hacían entregas durante ese período; que normalmente la bicicleta permanecía encerrada en el colmado durante la hora del almuerzo; y que, en tanto en cuanto el factor tiempo estaba envuelto únicamente, el permiso para usar la bicicleta le fué dado en esta ocasión específica, porque Cartagena la pidió prestada "para llegar temprano a casa". Como hemos visto, el haber proporcionado la bicicleta para permitir al empleado regresar temprano a su trabajo, hubiera ocasionado que el patrono fuera responsable. Pero el hecho de llegar a su casa temprano y regresar a la hora regular de las 2 p.m., fué solamente para la conveniencia del empleado. No siendo el uso de la bicicleta para algún fin del patrono, ésta no fué usada dentro de las atribuciones del empleo. *Miller* v. *Hoefgen*, 183 P.2d 850 (N.M., 1947); *Bohnsack* v. *Huson–Ziegler Co.*, 248 N.W. 764 (Wis., 1933).

■ Una cuestión un poco más difícil surge de los hechos que la corte inferior halló probados en el sentido de que, además de ir a su casa a almorzar, Cartagena llevaba a la misma un paquete de provisiones que había comprado para su propio consumo. Cartagena declaró que "fuí en la bicicleta porque tenía una comprita bastante regular y cuando llevo una compra regular, me llevo la compra en la bicicleta"; que corrientemente sus amigos lo llevan a su casa pero que en esta

ocasión no los esperó porque "era una compra bastante grande" la cual "no se la admitían" en la guagua. Uno de los codemandados también declaró que cuando Cartagena pidió prestada la bicicleta, "él [Cartagena] me dijo que tenía que llevar un paquete".

No podemos convenir que meramente porque, como parte incidental de haber tomado prestada la bicicleta para ir a su casa a almorzar, Cartagena también llevó algunas provisiones que había comprado para él en la tienda, debe considerársele como actuando dentro de las atribuciones de su empleo. Es verdad que en el colmado se vendía lo mismo en el mostrador que por mensajero. Pero la prueba fué al efecto de que normalmente no se entregaban artículos entre las 12 y las 2 p.m. Nada surge en este caso que indique que debido a circunstancias especiales los dueños del colmado se desviaran de esta regla y ordenaran a Cartagena, para beneficio y conveniencia por lo menos en parte para ellos, entregarse su propia compra durante la hora del almuerzo. Por el contrario, la prueba fué al efecto de que Cartagena solicitó permiso para usar la bicicleta. Si él hubiera estado usando la bicicleta para encomiendas de los patronos, tal permiso hubiera sido innecesario: él siempre usó la bicicleta como cosa de rutina cada vez que realizaba una entrega a nombre del colmado. No podemos resolver que Cartagena estaba realizando gestiones de los patronos, por el mero hecho de que incidentalmente llevaba a su casa la compra cuando fué a almorzar. *Cado* v. *Many*, 180 So. 185 (La., 1938). *Cf. Eckel* v. *Richter*, 211 N.W. 158 (Wis., 1926).(¹)

---

(¹) El único caso citado por la corte de distrito, *Ford* v. *Reinoehl*, supra, es claramente inaplicable. En dicho caso, si bien el empleado iba hacia su casa a comer y llevaba consigo una mantequilla, iba al mismo tiempo en una encomienda de su patrono. La corte resolvió a la pág. 123 del caso de *Ford* que toda vez que para ir a su casa el empleado no tenía que desviarse de la ruta exigídale por la encomienda de su patrono, dicho viaje no era una actividad independiente del empleado. Por otro lado, como hemos visto, en el caso de autos Cartagena realizó un viaje privado e independiente.

En vista de lo anteriormente expuesto resolvemos que, como cuestión de derecho, Cartagena no estaba actuando dentro de las atribuciones de su empleo cuando arrolló a la demandante mientras manejaba una bicicleta perteneciente a sus patronos, los tres codemandados. Por consiguiente, *la sentencia a favor de la demandante será revocada en cuanto a estos últimos y confirmada en cuanto a Cartagena.*