Lois J. SAMPLE & Willis S. Sample,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. 4-58-Civ-47.

United States District Court
D. Minnesota,
Fourth Division.

Nov. 12, 1959.

Sheldon J. Gensler, Schermer, Gensler & Shields, Minneapolis, Minn., for plaintiffs.

Fallon Kelly, U. S. Atty., Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for the defendant.

DEVITT, Chief Judge.

This suit arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, 2674 (1958) and asserts a claim for personal injuries allegedly sustained by the

negligence of a soldier who was driving his own automobile from Camp McCoy, Wisconsin to Fort Sheridan, Illinois. The sole issue for determination here is whether the soldier was acting "within the scope of his office or employment"[1] or "in line of duty"[2] at the time of the accident so as to make the United States responsible for his alleged negligence.

The facts have been stipulated. Ernest Griffith, 26 years of age, was a specialist second class, assigned on active duty to the 15th Signal Company, with permanent station at Fort Sheridan, Illinois. During the summer of 1957, the 15th Signal Company was temporarily reassigned for 140 days to Camp McCoy, Wisconsin, to aid in summer training of Army reservists in that area.

Under appropriate military authority, the Signal Company was ordered to proceed in four increments, viz., on April 19, May 1, May 16 and May 23, 1957. Griffith was assigned as driver of an Army vehicle to proceed with the May 16 increment. However, that morning he was absent without leave until 9 a. m. and the increment moved without him. Thereafter, on May 22, 1957, he was tried and adjudged guilty of being A.W. O.L. and fined $25.

Appropriate orders of the Army were then issued directing his transfer to Camp McCoy, Wisconsin. By the phrase "TPA is Authorized", he, along with some other soldiers, was authorized to use private transportation in going to and returning from Camp McCoy. Thereafter he drove his private automobile to Camp McCoy and received travel allowance for the trip.

In July, 1957, Griffith was ordered by wire to return immediately to Fort Sheridan, Illinois, to his parent organization. The wire read as follows:

"SP2 Ernest B. Griffith RA13350 507, Tdy Your Unit, Will Return To This Sta To Parent Org Immediately. Em Will Hand Carry All Service Records and Allied Papers"

Pursuant to this wire and endorsement on his original orders, Griffith departed Camp McCoy, Wisconsin, on July 12, 1957, shortly after 9:00 a. m. driving his private automobile. He was accompanied by Specialist Second Class Warren G. Allen, a soldier with an active duty status as a member of the 15th Signal Company. Allen was on a pass authorizing his absence from duty and from Camp McCoy until Monday, July 15, 1957.

Griffith, with his passenger, was proceeding southeasterly on U. S. Highway No. 12 in Walworth County, near Whitewater, Wisconsin, when his car collided with plaintiff Willis Sample's car traveling northwesterly. Plaintiff Lois J. Sample, the wife of Willis S. Sample, was a passenger in her husband's car. Both plaintiffs received injuries as a result of the collision and both soldiers died without regaining consciousness. The plaintiffs then brought this suit against the United States to recover for their injuries.

Whether a serviceman is "within the scope of * * * employment" is to be determined by the *respondeat superior* doctrine of the state where the accident occurred. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761. And the additional statutory words "in line of duty" do not change this basic common law

1. "(b) * * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Goverment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346 (1958).

2. " 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C. § 2671 (1958).

test. Cannon v. United States, 5 Cir., 1957, 243 F.2d 71, 72.

But since the relationship of a serviceman to his government is seemingly unique, the state court decisions dealing with ordinary employer-employee relationships are often definitionally remote to a soldier's scope of employment. This Court must, nevertheless, attempt to arrive at a result which it believes the Wisconsin Supreme Court would reach if faced with the same issue.

The applicable Wisconsin law arises from two sources: directly through ordinary *respondeat superior* cases, and indirectly through workmen's compensation cases. Since the test under the Wisconsin Workmen's Compensation Act is whether the employee was performing service "growing out of and incidental to his employment," the area of compensation liability is concededly larger than the area of *respondeat superior* liability for acts "within the scope of employment." Village of Butler v. Industrial Comm., 1953, 265 Wis. 380, 61 N.W.2d 490, 492. Some Wisconsin Workmen's Compensation cases, however, specifically rely on common law tests of "scope of employment," and are therefore relevant to the decision of the issue in this case.

The first case is Steffen v. McNaughton, 1910, 142 Wis. 49, 124 N.W. 1016, 26 L.R.A., N.S., 382, where a chauffeur using his employer's car during the noon hour, without permission, was held not to be within the course of employment. The Court states:

"While [the chauffeur] was so engaged, his employment and the relation of master and servant were suspended for the time being, unless the facts of the case show that the defendant consented to the chauffeur availing himself of this use of the machine to facilitate his labor and service, and in furtherance of the defendant's interests." 124 N.W. at page 1018.

In 1923, the Wisconsin Supreme Court decided in James v. Tobin-Sutton Co., 182 Wis. 36, 195 N.W. 848, 29 A.L.R. 457, that a traveling automobile salesman was an independent contractor and not an employee because the employer had no right to control the salesman's daily activities in accomplishing sales. So holding, the Court stated:

"It is well settled that where one drives his own automobile, a third party cannot be held liable for injuries to a stranger resulting from negligent driving unless the relation of master and servant or principal and agent exists between the third party and the driver, and the latter is actually at the time of the injury engaged in the furtherance of the master's or principal's business." 195 N.W. at page 848. See also Harris v. Richland Motors, Inc., 1959, 7 Wis.2d 472, 96 N.W.2d 840.

Circumstances bearing any real analogy to the present situation first arose in Aetna Life Ins. Co. v. Schmiedeke, 1927, 192 Wis. 574, 213 N.W. 292, 293. A salesman was held to be "within the scope of his employment" under the Workmen's Compensation Act when, upon current instructions, he was returning late at night to his home office, in his own car, from a trip in which he had mixed his own business with that of his employer. The Court stated:

"The time of making the trip was unimportant. It seems apparent that, whenever the trip was undertaken, he was clearly within the scope of his master's employment while on his return. The trip for the week was an entity. It included going and coming. Even though at times during the week he departed from the scope of employment, upon his return trip to Clintonville for the purpose of reporting to the office pursuant to his instructions he was again within the scope of his employment." 213 N.W. at pages 293–294.

The reverse situation arose in Barragar v. Industrial Comm., 1931, 205 Wis. 550, 238 N.W. 368, 78 A.L.R. 679, which, in distinguishing Schmiedeke, held that a salesman bringing his family home from a vacation was not within

the course of employment because the trip was essentially not the employer's but the employee's, even though he was also incidentally checking accounts on the way home. The Court adopted the test laid down by Judge Cardozo in the similar case of Marks' Dependents v. Gray, 1921, 251 N.Y. 90, 167 N.E. 181, 182:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been cancelled * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, * * * the travel is then personal, and personal the risk. 238 N.W., at page 370.

Schmiedeke and Darragar, although workmen's compensation cases, were later relied on as providing the test for determining that an employer was liable under *respondeat superior* for his negligent traveling salesman who had finished his work ahead of schedule and was returning home for the week end. Fultz v. Lange, 1941, 238 Wis. 342, 298 N.W. 60. See also Bohnsack v. Huson-Ziegler Co., 1933, 212 Wis. 65, 248 N.W. 764, applying Judge Cardozo's test to remove liability from a noon-lunch trip in the employer's truck.

Using Judge Cardozo's basic test of deciding whether a debated trip was that of the employee or that of the employer, it seems the Wisconsin Supreme Court would agree with a distinction founded in the nature of the transfer calling forth the employee's travel. In an annotation entitled "Employer's liability for negligence of employee in driving his own car,

§ 13. Travel between jobs or assignments," 52 A.L.R.2d 287, 325 (1957), the annotator suggests that:

"Where the travel was between assignments of some permanence, at widely separated geographical points, it has usually been held that the employee was not acting for his employer in traveling." 52 A.L.R. 2d at 325.

but that:

"Where the employment requires the employee to regularly travel from job to job in the course of his work, the courts have been more ready to find that he acted in the course of his employment in so traveling in his own car, at least where the employer failed to provide other transportation and consented to the use of the employee's vehicle." 52 A.L.R.2d at page 327.

Combining the two, it would seem that a permanent transfer of great distance and time, allowing some amount of discretion to the employee, is generally the employee's personal trip, while a transfer, temporary and recurring in nature, of less distance, time and discretion, is ordinarily the employer's trip.

Relating this test to the federal decisions similar to the present case, I conclude that the trip taken by Griffith was essentially the trip of the United States Government, thus placing him within the scope of his employment at the time of the accident.

The federal decisions are necessarily in conflict because each must apply local law. Where the general facts have been that a serviceman was transferring from one permanent base to another, with authorized reimbursement for travel in his own automobile, and with at least several days of travel time, it has been held that he is not within the scope of employment. Chapin v. United States, 9 Cir., 1958, 258 F.2d 465, certiorari denied, 1959, 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627; 359 U.S. 976, 79 S.Ct. 875, 3 L.Ed.2d 843; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914, certiorari denied

1950, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333; Noe v. United States, D.C.E.D. Tenn.1956, 136 F.Supp. 639. See United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239. But other decisions have reached the opposite conclusion on fairly similar facts. Hinson v. United States, 5 Cir., 1958, 257 F.2d 178; United States v. Mraz, 10 Cir., 1958, 255 F.2d 115; United States v. Kennedy, 9 Cir., 1956, 230 F. 2d 674; and see Marquardt v. United States, D.C.S.D.Cal.1953, 115 F.Supp. 160.

The circumstances of the Griffith trip are well within the liberal scopes of employment defined in the latter set of cases, and even under the more strict definitions applied in the first set, it is probable that Griffith's trip could still be considered within the scope of employment.[3]

Griffith's original transfer to Camp McCoy was called forth by a temporary job assignment, and not a complete disassociation with one base and a permanent reassignment at another. His trip to McCoy was a part of a whole troop movement and not the isolated relocation of one individual at another job site.

There is no evidence of any frolic or detour from the direct route necessary to make the trip from McCoy to Sheridan or that Griffith was concurrently accomplishing any personal objective other than the movement of his own car back to his home camp. The government's citation of Wisconsin cases dealing with the employee's personally motivated departure from an activity originally within the scope of his employment are therefore not in point. Nor does it seem to me that there is any analogy between

the present circumstances and the unauthorized passenger case, Seidl v. Knop, 1921, 174 Wis. 397, 182 N.W. 980, because it is evident that there is no causal relation between the presence, or absence, of Specialist Second Class Allen and the injuries to the plaintiffs. The decision in Erickson v. Great Northern Ry. Co., 1934, 191 Minn. 285, 253 N.W. 770, is distinguishable on the important fact that in that situation it appears that there was neither express nor implied authority for the employee to be using his own car in moving between daily work stations. See Rampi v. Vevea, 1949, 229 Minn. 11, 38 N.W.2d 297.

In its brief, the government has raised an additional issue of fact not covered in the stipulation. The government claims that Griffith was deliberately A.W.O.L. when his truck convoy left Camp Sheridan so that he would be allowed to take his own car to Camp McCoy for personal recreational activities. Since he had already been provided with military transportation, the use of his automobile is therefore supposed to have been occasioned only by his own personal motives and not by the furtherance of any interest or business of the United States. Conceding that Griffith was deliberately A.W.O.L., his alleged Bilko-like manipulation of army regulations for his own advantage does not eliminate the military purpose from his authorized trip to Camp McCoy.

The commanding officer's original consent for Griffith to use his own car in going to McCoy was not only for Griffith's own personal convenience, but concurrently served the benefit of the government, since the military vehicles had already left. Similarly, his return trip

---

3. A good statement of a strict view is made by Judge Walter H. Sanborn in Standard Oil Co. v. Parkinson, 8 Cir., 1907, 152 F. 681, 682:

"The test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the casual act or omission at the very instant of the act or neglect. There can be no recovery of a person for the act or omis-

sion of his alleged servant under the maxim, 'respondeat superior,' in the absence of the right and power in the former to command or direct the latter in the performance of the act or omission charged, because in such a case there is no superior to respond." [cited in United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914, 916, 917, certiorari denied, 1950, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333.]

eliminated the possible need for a military vehicle.

The distance of the trip was roughly 250 miles and was easily traversed in one day. The abortive trip itself took place on a regular workday, Friday, during regular working hours.

The government claims that there is significance in the failure of the wire to specify that private travel was authorized on the return trip of Griffith. However, as is evidenced by the endorsement, the wire is referable to the original orders of transfer to Camp McCoy, so it is undebatable that at the time of the accident Griffith was authorized to be using his own car and was being reimbursed for his travel.

The Court is not informed as to the purpose of Griffith's sudden recall back to Camp Sheridan nor as to whether his superiors planned to return him to Camp McCoy with his sojourning unit. Neither is the exact military status of Griffith at the time of the accident clear from the stipulation and the briefs. But, in any event, he was not on leave, nor was he traveling with more than one travel day authorized, as in those cases which have held a traveling serviceman to be outside the scope of his employment.

Whatever the technical status of the pass by which he was authorized to travel, he was under orders to return "immediately" a distance of roughly 250 miles. "Immediately" to an enlisted man in the army does not ordinarily mean "take your time." Consequently, the ensuing trip in response to this order can hardly be said to have severed the employer-employee relationship for that period of time. See United States v. Mraz, 10 Cir., 1958, 255 F.2d 115, 117; cf. City of West Bend v. Schloemer, 1930, 202 Wis. 319, 232 N.W. 524; Kuehmichel v. Western Union Tel. Co., 1914, 125 Minn. 74, 145 N.W. 788, L.R.A.1918D, 355.

Applying the general principles elicited from Wisconsin law, and viewing them in the light of facts in similar federal cases, it appears that at the time of the accident, Griffith, even though in his own automobile, was "availing himself of this use of the machine to facilitate his labor and service, and in furtherance of the [government's] interests," Steffen v. McNaughton, 1910, 142 Wis. 49, 124 N.W. 1016, 1018, 26 L.R.A., N.S., 382, that "the work * * * create[d] the necessity for travel," Barragar v. Industrial Comm., 1931, 205 Wis. 550, 238 N.W. 368, 370, 78 A.L.R. 679, that this temporary duty assignment "was an entity [which] included going and coming," Aetna Life Assurance Co. v. Schmiedeke, 1927, 192 Wis. 574, 213 N.W. 292, 294, and finally, that "actually at the time of the injury [he was] engaged in the furtherance of the [government's] business," James v. Tobin-Sutton Co., 1923, 182 Wis. 36, 195 N.W. 848, 29 A.L.R. 457.

This memorandum shall constitute the Court's finding that Specialist Second Class Griffith was within the scope of his employment and in line of duty at the time of the accident.