Lois M. COBB and Russell Cobb,
Plaintiffs,

v.

UNITED STATES of America and
Robert Kumm, Defendants.

No. 64 C 34.

United States District Court
N. D. Illinois, W. D.

Nov. 4, 1965.

**506**

Albert H. Manus, Jr., Manus & Korf, Freeport, Ill., for Lois M. Cobb and Russell Cobb.

Edward V. Hanrahan, U. S. Atty., Jack B. Schmetterer, Asst. U. S. Atty., Chicago, Ill., for United States.

WILL, District Judge.

Plaintiffs bring this action against Pfc. Robert Kumm and the United States to recover damages for injuries sustained in an accident between their automobile and an automobile driven and owned by Pfc. Kumm. The United States has been named a party defendant on the theory that, at the time of the accident, Pfc. Kumm was "acting within the scope of his office or employment" as a member of the United States Army, rendering the United States potentially liable for his conduct under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

The United States moves for summary judgment, asserting that Pfc. Kumm was not acting within the scope of his employment at the time of the accident, but rather, was pursuing his own interests on leave.[1] The relevant and uncontroverted facts are as follows. On June 25, 1963, Pfc. Kumm was receiving medical treatment at Fitzsimons General Hospital, Denver, Colorado. On that day, he received orders reassigning him to the 113th Intelligence Corps in Chicago, Illinois and authorizing fifteen days leave between the date of his release from Fitzsimons and the day he was due to report in Chicago. Pursuant to Army regulations, no mode of transportation was specified in the orders.

Pfc. Kumm was free, from the moment of his departure from Fitzsimons, to travel at his own pleasure and discretion, subject only to the requirement that he report for duty in Chicago at the time specified. The leave authorized under his orders is defined as absence from duty "to afford periods of respite from routine duty or to permit personal attention to matters not related to the military service". United States Army Regulation AR 630–5, 22 December 1960. ¶ 2(1). Under the same regulation, ¶20c, Kumm was entitled to receive reimbursement for travel expense, not to exceed six cents a mile, based on the official mileage between Denver and Chicago, rather than on the route his leave entitled him to take.

Kumm was discharged from Fitzsimons on June 27 and traveled to his home in Winnetoon, Nebraska. On July 9, he purchased a Chevrolet motor vehicle. Three days later, on July 12, he left Winnetoon and began driving to Chicago, intending to report to the 113th Intelligence Corps on the 13th. En route, in Freeport, Illinois, he was involved in the collision which is the subject of this lawsuit.

The sole question raised by the instant motion is whether, under the facts stated above, Pfc. Kumm was acting within the scope of his employment. This is a question governed by the law of Illinois. See Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).

It is axiomatic that cases involving the application of respondeat superior must each be determined on their own particular facts. Here, the relevant circumstances involve a transfer from one

---

[1] Plaintiffs have filed a "cross-motion for summary judgment," seeking only to establish the "fact" that the United States is a proper party defendant rather than being directed at an adjudication on the issue of liability. While such a motion is not truly one for "summary judgment", the court's determination of the government's motion necessarily involves the same issues and the conclusion expressed herein resolves the substantive question fully. Any discussion of the procedural propriety of plaintiffs' motion would be merely academic.

place of employment to another coupled with authorized absence from duty or "leave" in the intervening period. No Illinois case is directly in point. However, the various Illinois decisions concerning employer's liability, coupled with the analyses applied by courts of other jurisdictions in similar cases, lead the court to conclude that Pfc. Kumm was not acting within the scope of his employment at the time the accident here involved occurred.

■■ Under Illinois law, the doctrine of respondeat superior is applicable only where the employment relation can be found to exist at the time and with respect to the conduct giving rise to the injury. Haynes v. Holman, 319 Ill.App. 396, 49 N.E.2d 324 (1943); Olender v. Gottlieb, 344 Ill.App. 552, 101 N.E.2d 622 (1951). Moreover, as Haynes clearly demonstrates, travel by an employee is not within the scope of employment unless it is in furtherance of the specific duties the employee was hired to perform, notwithstanding the fact that, insofar as the *employee* is concerned, his motivation for travel bears some relation to a business purpose and might have benefited his employer. For example, when traveling to work, an employee is preparing to perform his business duties. In doing so, however, he is engaged in *his* business and not the business of his employer. His arrival at work is theoretically necessary to further his employer's business, but that in itself does not require a finding that the act of travel is within the scope of his employment. See Hogan v. City of Chicago, 319 Ill.App. 531, 537–538, 49 N.E.2d 861 (1943); see generally, Annotation, 52 A.L.R.2d 287, 303 (1954).

Similarly, the nature of the employment relationship may vary with respect to the acts involved, partaking, with respect to certain elements, of a master-servant relationship and, with respect to other elements of a relationship akin to that of an independent contractor. Burster v. National Refining Co., 274 Ill.App. 104, 110 (1934).

Burster is particularly relevant in establishing guidelines for the disposition of the instant case. That action arose out of a collision involving a vehicle driven by one Shockey, a salesman employed by defendant National Refining Company. The evidence showed that the employer exercised a considerable degree of supervision over Shockey's selling activities and that he was authorized to use his privately-owned vehicle for such purposes. The accident, however, occurred while Shockey was driving to his home (and office) at Woodstock, Illinois from a company sales meeting in Peoria. Shockey was directed to attend the Peoria meeting but was given no directions as to the route or method of travel to be used. He received an expense check calculated on the basis of the rail fare from Woodstock to Peoria and return. Relying principally on the finding that Shockey's automobile travel was not at the direction nor under the control of his employer and that he was free to use his own discretion as to how and when he should travel, the court found that he was not acting as a servant of National Refining Company at the time of the accident.

■ Plaintiff in Burster, of course, contended that Shockey's trip had a "dual purpose", that he was acting in his own behalf and as a servant of his employer. Plaintiffs here similarly submit that Pfc. Kumm was both enjoying his last day or two of leave and proceeding to his new military post. However, the dual purpose concept is applicable only if the employment relationship exists at the time of the accident. Burster suggests that the relationship of master and servant exists only insofar as the employer sought to be charged has some right to control the party involved in the accident with respect to the conduct giving rise to the injury.

■ It is clear that where the existence of the employment relation is established at the outset, the requisite right to control may be implied by law. Thus, in Hogan v. City of Chicago, supra, the court rejected the contention that Bur-

ster restricted employer liability to those situations where the employer had the ability to control "the actual management and operation of the servant's car", since it had already been shown that the employer authorized the use of the vehicle in connection with employment activities. 319 Ill.App. at 545, 49 N.E.2d at 867. The court specifically noted that under the city's system, the work day commenced at 8 a.m. when the employee was required to report to a ward office and obtain his daily assignment and, moreover, that he was encouraged to use his own vehicle to travel from the ward office to the duty station. In such an instance, the necessary "control" is given the master by law and further inquiry into the subject is unnecessary. Accordingly, in Hogan, the court found the travel to be within the scope of employment, specifically distinguishing it from travel to the location at which the employment relationship first begins.

Hogan, however does not overrule the Burster principle that the right to control the conduct involved is an element to be considered in determining the preliminary question, viz., whether the employment relation necessary to respondeat superior existed at the time of the incident. In the instant case, there is neither actual control nor any basis for implying control.

■ In general, control will be implied by law if the activity of the employee at the time bears such a connection to the business of the employer as will permit the conclusion that responsibility for the employee's conduct in such a situation is fairly included within the risks of doing business assumed by the employer. The absence of such a connection may indicate that the employment relation has been temporarily suspended. Thus, in Rupp v. Walgreen Co., 270 Ill. App. 346 (1933). The court concluded that the employment relation was suspended during an employee's dinner hour, resting its decision on the fact that the employee's conduct during such period is in no way determined by the fact of his employment. Quoting from Bloom v.

Krueger, 182 Wis. 29, 31–32, 195 N.W. 851 (1923), the Illinois court pointed out that the time involved was the "employee's time" and not the employer's. 270 Ill.App. at 352. Of course, the fact that the employee must return to work at the conclusion of the period affects his liberty to utilize the time away from duty. However, the factors which determine the employee's conduct during such a period are ones which are unrelated to the business of his employer. The employer cannot fairly be said to have assumed the risk inherent in the employee's decision as to whether he should walk to a nearby restaurant or drive home or visit a friend on the outskirts of town. These are choices made on the basis of the employee's personal preferences and he alone assumes responsibility for the related risks.

This same distinction is evidenced in decisions in other jurisdictions respecting the second facet of the problem here presented, viz., the responsibility of the United States for travel by military personnel between assignments. Plaintiffs point to several cases entering judgment under the Tort Claims Act, however, in each instance where scope of employment was in issue, the court distinguished the case of travel *coupled with leave* from the point-to-point transfers involved in the case before it. The basis for this distinction is identical to that suggested in the Illinois cases, supra: when the soldier is at liberty, the act of traveling between posts at his own leisure and discretion bears no relation to the business of his employer. Employing language markedly similar to the Illinois court in Rupp, supra, the court in United States v. Mraz, 255 F.2d 115 (10 Cir. 1958), pointed out that

"there is a demonstrable difference between the relationship of an army officer traveling from one permanent base to another at government expense, with leave en route, and one without leave whose travel is expressly 'deemed necessary in the military service.' In the former instance, the officer's only duty is to

report at a certain place at a certain time; while in the latter, his time belongs to the government and is measured out to him." 255 F.2d at 117.

The court concluded that, under the point-to-point transfer situation, one could not say that the soldier found himself at the place and time in question "wholly from some external, independent and personal motive." 255 F.2d at 117–118. In the "leave" situation, the converse is true.

Similarly, in Hinson v. United States, 257 F.2d 178 (5 Cir. 1958), the court noted that the soldier was ordered to travel and was not on leave. "His only choice was the immaterial one of route and means of travel." 257 F.2d at 182. Being directed *"to proceed"* (emphasis in the original) the soldier was not at liberty to arrange his journey according to his own desires.

In Cooner v. United States, 276 F.2d 220 (4 Cir. 1960) the court considered the question of "control" and noted that, in the case before it, the control issue was of no consequence inasmuch as

"[t]he present case does not involve a soldier on leave but, rather, one traveling directly from one duty station to another, under specific directions to do so, and using an authorized mode of transportation. He had no personal motive in driving to Canada but was *ordered* to make the trip, and was allowed only sufficient time to drive to Ottawa and no free time for any side trips." 276 F.2d at 224.

The court further distinguished the case from one involving leave, pointing out that

"[a] serviceman on leave or on pass cannot, normally, be said to be act-ing within the scope of his employment. He is in a similar position to a private employee during the latter's non-work hours or vacation. His activities at such times consist of his personal affairs, not usually connected with the business of the employer." 276 F.2d at 225.

Finally, in Sample v. United States, 178 F.Supp. 259 (D.Minn. 1959), the court distinguished the temporary transfer involved in the case before it from "a permanent transfer of great distance and time, allowing some amount of discretion to the employee" which, it stated, is generally treated as "the employee's personal trip". 178 F.Supp. at 262. Discussing the suspension of the employment relationship, the court noted that the soldier "was not on leave, nor was he traveling with more than one travel day authorized, as in those cases which have held a traveling serviceman to be outside the scope of his employment.

"Whatever the technical status of the pass by which he was authorized to travel, he was under orders to return 'immediately' a distance of roughly 250 miles. 'Immediately' to an enlisted man in the army does not ordinarily mean 'take your time'. Consequently, the ensuing trip in response to this order can hardly be said to have severed the employer-employee relationship for that period of time (citing Mraz, supra)." 178 F.Supp. at 264.

The case before this court contains all of the distinguishing facts pointed to in Mraz, Hinson, Cooner and Sample, supra.

As opposed to these cases, and the cases specifically holding the United States blameless in leave situations [2], plaintiffs point to only one instance in

2. See, e.g., United States v. Eleazer, 177 F.2d 914 (4 Cir. 1959) cert. denied, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950); United States v. Sharpe, 189 F.2d 239 (4 Cir. 1951); Rutherford v. United States, 168 F.2d 70 (6 Cir. 1948); Noe v. United States, 136 F.Supp. 639 (E.D.Tenn.1956); and Chapin v. United States, 258 F.2d 465 (9 Cir. 1958). Plaintiffs point out that in some of the above cases, the soldier was not receiving reimbursement for expenses, however, as evidenced in Burster v. National Refining Co., supra (in text), the fact of

which both leave and transfer were involved and the Tort Claims Act was applied, United States v. Kennedy, 230 F.2d 674 (9 Cir. 1956). Kennedy is of little value in disposing of the question before this court. Initially, it is distinguished by the fact that the government there admitted that the serviceman was acting within the scope of his employment. Kennedy further involves peculiar circumstances not present here, inasmuch as the serviceman's leave and between-station travel could be considered separate activities, the order providing for ten days leave at a given location to be followed by travel from there to a new base, the leave travel and "transfer" travel being in different directions.

Plaintiffs emphasize the "transfer" aspect of the present case to the exclusion of the fact that Pfc. Kumm was on leave. While as noted in Sample, supra, a majority of jurisdictions treat permanent long distance transfer without leave as a suspension of the employment relationship, there is authority *contra* and no Illinois court has expressly considered the subject. This court, however, does not believe that decision of the instant case requires theoretical consideration of the law regarding employee transfers apart from the issue of leave. The facts here involve a transfer *with leave* and the conclusion expressed herein is necessarily confined to such circumstances. As noted in Voytas v. United States, 256 F.2d 786 (7 Cir. 1958), a soldier on leave is in the identical position as a civilian employee on vacation and "[i]t is well established in Illinois that an employee who is on vacation cannot render his employer liable for that which he does in furtherance of his private pursuits

during such period [citing Olender v. Gottlieb, supra]". 256 F.2d at 789.

The fact that a soldier is returning to duty at the time of the accident (whether to a new duty station or to the post at which he was previously assigned) does not establish a distinction from the general rule that a vacation suspends the employment relation. The plaintiffs suggest that the fact that the army "ordered" the return while civilians generally return to work of their own free will is a meaningful distinction. To so hold would be to establish an illogical distinction between military personnel and other employees simply because the federal government finds itself in the dual rule of an employer and a military establishment which operates by issuing "orders". The waiver of sovereign immunity pursuant to the Tort Claims Act is based on the policy of placing the United States in the same position as a private employer with respect to liability. It is not designed to extend the scope and application of the doctrine of respondeat superior because of unique practices which are necessary to the operations of the military establishment. See Chapin v. United States, 258 F.2d 465, 468, 469–470 (9 Cir. 1958).

Accordingly, the motion of the United States for summary judgment will be granted and plaintiff's cross-motion denied. The court further expressly determines that there is no just reason for delay and expressly directs the entry of a final judgment in favor of the defendant United States as provided for in Rule 54(b), F.R.Civ.P. An order consistent with the foregoing will be entered.

reimbursement does not preclude a finding that the particular travel was not within the scope of employment. Plaintiffs also argue that Chapin, supra, rests on decisions of California courts finding *all* transfer cases outside the scope of employment. See McVicar v. Union Oil Company, 138 Cal.App.2d 370, 292 P.2d 48 (1956). While McVicar would appear to rest on an analysis of "control" sub-

stantially similar to that applied in Illinois, this court's decision, as noted infra (in text), is limited only to the facts here presented (and also present in Chapin), viz., transfer *with leave*. Whether the courts of Illinois would follow McVicar in a point-to-point transfer situation is an issue beyond the scope of this opinion.