## Wilson et al. v. Deegan's Adm'r.

Feb. 20, 1940.

Rehearing Denied May 7, 1940.

J. S. Sandusky, Judge.

Ben V. Smith & Son for appellants.
Kennedy & Kennedy for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Wilson Motor Company is a partnership composed of Jesse Wilson and Lawrence Wilson, his son. In April, 1938, Murrell Wilson and Howard Wilson, sons of Jesse Wilson and brothers of Lawrence Wilson, were employed as mechanics by the Wilson Motor Company which operated a garage in Somerset, Kentucky. On April 22, 1938, Murrell and Howard Wilson left the garage in an automobile owned by the Wilson Motor Company to drive to their home for lunch. On their way home the automobile in which they were riding, and which was being operated at the time by Murrell Wilson, collided with a bicycle being ridden by Gerald Deegan, a 9-year-old boy. The Deegan boy was fatally injured and died on the following day. His father, J. L. Deegan, qualified as the administrator of his estate, and brought this action against the Wilson Motor Company to recover damages for his son's death on the theory that Gerald Deegan's injuries and death were caused by the negligent operation of the defendants' automobile by Murrell Wilson, defendants' servant and employee, who was acting at the time within the scope of his employment. The defendants filed an answer which was in four paragraphs. Paragraph one was a traverse. In paragraph two defendants alleged that Murrell Wilson was employed as a mechanic by them; that they had previously loaned him one of their second hand cars for his personal use; that at the time of the accident he had quit work for lunch and was on his way home, and, at the time of the accident, was not engaged in any service or business for defendants and was not acting within the scope of his employment, but was driving the car solely for his own pleasure and convenience. In paragraph three it was alleged that the deceased, at the time complained of, was riding a bicycle in a place of safety and while meeting the car, in close proximity thereto suddenly changed his course and ran his bicycle directly in front of the car and so near to it that the collision could not have been avoided. Paragraph four was a plea of contributory negligence. Upon the trial of the case, the plaintiff obtained a judgment for $8,000, and the defendants have appealed.

At the time of the accident, Gerald Deegan was traveling east on Cotter street in Somerset, and Murrell and Howard Wilson were traveling west on the same

street. According to the evidence for the plaintiff, Murrell Wilson was driving his automobile at a rapid rate of speed, and, at a point where the street curved, the automobile crossed over the center line of the street and struck Gerald Deegan, who was on the right-hand side of the street in the direction in which he was traveling, while the evidence for the defendants tended to show that the bicycle swerved suddenly to the left and directly in front of the approaching automobile and so near to it that the collision could not have been avoided by Murrell Wilson. It is not claimed that the evidence on the question of negligence was not sufficient to take the case to the jury, but it is contended that the owners of the automobile are not liable for its negligent operation, since the evidence shows that Murrell Wilson was not acting within the scope of his employment at the time of the accident but was using the automobile on his own business, though with the consent of its owners. Murrell and Howard Wilson lived about three-fourths of a mile from the Wilson Motor Company's garage. Murrell Wilson formerly owned an automobile and when he and his brother were first employed by appellants as mechanics they used Murrell's automobile in going to and from their place of work. Shortly before the accident, Murrell sold his car and appellants gave him and his brother permission to use one of their used cars. The two Wilson boys were married and lived in the same house. They kept one of the appellants' cars at their home and used it to go back and forth between their home and the garage and also for their pleasure on Sundays and at night. They had no specified hours to work, but usually started to work about 7 o'clock in the morning, took an hour off for lunch, and usually quit work about 5 o'clock in the afternoon. They usually left the garage about 12 o'clock noon to go to their lunch, but on the day in question they left about 12:30 p. m. Appellants advance the argument that they permitted Murrell Wilson to have the possession and use of the car as a bailee, and that they are not liable therefore for his negligence in its operation.

It must be conceded at the outset that the master is not liable for the negligent acts of his servant while driving the master's car for his own purposes. Ordinarily, the master's liability rests upon the doctrine of respondeat superior. Unless the servant at the time of

the accident was acting within the scope of his employment and in the furtherance of the master's business, the latter is not liable. Koch's Adm'r v. Koch Brothers, Incorporated, 274 Ky. 640, 119 S. W. (2d) 1116; Packard-Louisville Motor Company v. O'Neal, 248 Ky. 438, 58 S. W. (2d) 630; Keck's Adm'r v. Louisville Gas & Electric Company, 179 Ky. 314, 200 S. W. 452, L. R. A. 1918C, 654; Louisville Lozier Company v. Sallee, 167 Ky. 499, 180 S. W. 841.

As a general rule, the master is not liable for the servant's negligence while traveling to and from meals although the servant is driving the master's car, but the circumstances may be such that the servant, by the use of the car, is furthering his master's business as where he is permitted to drive the car to and from his meals for the purpose of enabling him to reach his work earlier. If the loan is made merely to accommodate the servant the master is not liable, but if it is made for the purpose of facilitating the employer's work then the servant, while so using the car, acts within the scope of his employment. In Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Volume 5, Section 3041, it is said:

> "Where a master places at the disposal of his servant an automobile to be used by the servant in going to and from his work, and where the transportation is beneficial to both, the relation of master and servant continues while the automobile is used for such purpose."

In 5 Am. Jur., Automobiles, Section 379, the rule is stated thus:

> "Whether the owner of a car is liable for injury or damage inflicted by reason of the negligence of a servant or employee in the operation thereof while using the same in going to and from his meals, is a question which does not permit of categorical answer; the answer is largely dependent on whether the servant or employee is, at the time of the injury, acting within the scope of his employment, and consequently, on the facts and circumstances of each particular case. * * * If, however the servant, in order the better to execute and prosecute the master's business, uses the master's car to go to his meals, in order to shorten the time that it would

otherwise take and correspondingly lengthen the time of service for the master, he may be deemed to be acting in furtherance of his master's business and within the scope of his employment, and the master may be held liable for injury or damage inflicted while the servant is so using the car. Obviously, if an employer furnishes an employee with an automobile in which to go to and from his meals in order that he may go and come more quickly, the employer is liable for injuries resulting to third persons, caused by a collision while the employee is returning to his business.''

There is some proof that appellants gave Murrell and Howard Wilson permission to use one of their cars for appellants' own benefit, and therefore the question as to whether or not Murrell Wilson was acting within the scope of his employment when the accident occurred was one for the jury to be determined from the consideration of all the surrounding facts and circumstances. After Murrell Wilson sold his automobile, appellants gave him and his brother permission to use one of the Wilson Motor Company's used cars. It is obvious from appellant's testimony that part of the inducement for the loan of the car was to enable their employees to go to and from their meals quicker, to reach their place of work promptly, and thus facilitate the employers' work. Appellant Jesse Wilson, after stating that Murrell and Howard Wilson had no specified number of hours to work, testified that they could go to and from their meals quicker in an automobile than by walking.

He was also asked this question and made this answer:

''After your son Murrell Wilson had sold his car you considered that it was necessary to let him use one of your cars to go back and forth to his meals? A. Yes, I told him he could use it, and take care of it.''

Appellant Lawrence Wilson was asked this question and made this answer: ''After Murrell Wilson sold his car it was necessary for your business that you permit him to use one of your cars? A. Yes, sir.'' In his cross-examination he was asked: ''It was your purpose in allowing these boys to use the cars to go to their din-

ner and back and save time?" and he answered, "Yes, they could save time by it."

Appellants were examined at length in regard to the distance between Murrell Wilson's home and the Wilson Motor Company garage and the time saved by going back and forth in an automobile, and appellants objected to this line of questioning, but the evidence was competent as it tended to show the purpose for which the loan of the car was made.

The facts and circumstances are such that a jury might reasonably infer the loan of the car was made for the double purpose of facilitating the master's work and serving the convenience and pleasure of the employees. Whether the owner of a car is liable for the negligence of a servant in its operation while using it in going to and from his meals depends upon the facts and circumstances of the particular case, and where there is some evidence that the car was being used with the owner's consent in order that the servant might better prosecute and further his master's business, the question as to whether or not the servant, at the time of the accident, was acting within the scope of his employment is for the jury to determine. Ashland Coca Cola Bottling Company v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52; Chambers v. Kennedy, Mo. Sup., 274 S. W. 726; Butler v. Hyperion Theatre Company, 100 Conn. 551, 124 A. 220; Dunbaden v. Castle's Ice Cream Company, 103 N. J. L. 427, 135 A. 886; Brennan v. J. B. White Motor Company, 210 App. Div. 533, 206 N. Y. S. 544, affirmed in 240 N. Y. 597, 148 N. E. 720; Branchini v. Florio, 119 Conn. 212, 175 A. 670; Zondler v. Foster Mfg. & Supply Co., 277 Pa. 98, 120 A. 705; Walsh v. Feinstein, 251 Mass. 109, 146 N. E. 355; Silent Automatic Sales Corporation v. Stayton, 8 Cir., 45 F. (2d) 471; annotations in 68 A. L. R. 1058, and 45 A. L. R. 490. It follows from what has been said that the defendants' motion for a directed verdict was properly overruled.

Instruction No. 1 told the jury that if they believed "from the evidence that on the occasion of the injury of Gerald Deegan as referred to in the evidence, Murrell Wilson was acting within the scope of his employment for the Wilson Motor Company, as that term is defined in Instruction No. 2 below, then you are instructed that he was the agent of the defendants." The instruction

then defined the duties of the driver of the car. The second instruction defined the term "scope of employment," and submitted that question to the jury. We find no error in these instructions. Appellants offered ten instructions all of which were refused except instruction No. 5, which was an instruction on contributory negligence. They also offered an instruction defining the duties of the plaintiff's intestate, and an instruction, in substance, to the effect that if the jury believed from the evidence that the plaintiff's intestate suddenly changed the course of his bicycle and rode same in front of or against the automobile of defendants, and that the driver, by the use of ordinary care, could not stop the automobile, arrest its motion, or change its course, in time to prevent colliding with the deceased, then they should find for the defendants. We think an instruction defining the duties of the deceased should have been given, and also that the contributory negligence instruction should have been followed by an instruction on last clear chance as directed in Dixon v. Stringer, 277 Ky. 347, 126 S. W. (2d) 448. The defendants were entitled to have their theory of the case presented. Appellee insists that there was no evidence authorizing such an instruction, but there was testimony to the effect that the deceased apparently lost control of his bicycle and that it suddenly swerved to the left immediately in front of the automobile.

> Murrell Wilson described the accident as follows: "Well, we was going down Cotter Avenue; I saw this boy coming on his bicycle some distance away from us, and when he got up close to us, it looked like he started off of the gravel, and he just lost control of the bicycle and started falling into the car, he hit the car."

He further testified that he was traveling at a speed of 20 or 25 miles an hour; that he applied the brakes, but that it was impossible for him to stop and avoid striking the deceased after the latter started to fall.

Appellants also complain because the attorney for the plaintiff persisted in asking the witnesses Jesse W. Wilson and Viola Garland certain questions, objections to which had been sustained and which tended to indicate that the defendants carried liability insurance. It is obvious that the purpose of this line of questioning

was to get before the jury the fact that the defendants carried insurance. This practice has been condemned on numerous occasions, and should not be repeated on another trial.

The judgment is reversed, with directions to grant appellants a new trial, and for further proceedings consistent herewith.