**Mary Helen CROWE et al., Appellants,**

v.

**Charles MILLER et al., Appellees.**

Court of Appeals of Kentucky.

May 14, 1971.

Jerry W. Nall, Nall & Stephens, John D. Miller, Owensboro, for appellants.

William L. Wilson, George S. Wilson, III, William L. Wiesman, Robert T. Sweeney, Owensboro, for appellees.

DAVIS, Commissioner.

Mary Helen Crowe and Joseph F. Crowe, Jr., her husband, filed separate suits against Dennis Carl Lanham and Charles Miller, seeking damages allegedly sustained by each as the result of a motor-vehicle collision. It was charged that Lanham negligently caused the accident while acting within the scope and course of his employment at Miller's used car lot.

The trial court dismissed the complaints against Lanham on the ground that the one-year statute of limitation had run before the actions against him were commenced in good faith. A directed verdict, and judgment pursuant to it, resulted in the dismissal of the complaints against Miller on the basis that there was no showing that Lanham was acting within the scope or course of his employment by Miller.

Disposition of each phase of the appeal will be made in this opinion and requires

a separate statement of the facts affecting them.

The accident giving rise to the litigation occurred on February 4, 1965. KRS 413.-140(1) (a) fixes a limitation period of one year in cases of this type. On February 1, 1966, the complaints were filed and process was issued. As a matter of convenience, reference to "the complaint" shall include the separate complaints.

On February 1, 1966, just after filing the complaint, Mr. Jerry Nall, attorney for the plaintiffs, learned that Lanham was under twenty-one years of age. Mr. Nall telephoned the sheriff's office and learned that the summonses in each case had been delivered to the sheriff by the circuit clerk, but no service had yet been undertaken. In an effort to comply with CR 4.04(3), which deals with the manner of serving process upon an unmarried infant, Mr. Nall obtained the process papers from the sheriff and caused to be typed on them the following instructions for service as to Lanham: "Serve Joseph Carl Lanham, father of Dennis Carl Lanham." Mr. Nall returned the summonses to the sheriff's office that same day, and on February 3, 1966, the sheriff undertook to serve Dennis Carl Lanham by delivering a copy of the summons to Joseph Carl Lanham, father of Dennis.

On February 2, 1966, Mr. Nall moved for the appointment of a guardian *ad litem* for Dennis Carl Lanham, "upon the grounds that said defendant is an infant over 14 years of age who has no guardian, curator or committee residing in this state or elsewhere." The motion was accompanied by Mr. Nall's affidavit, which recited that Dennis was under twenty-one years of age, noting his birth date as being October 8, 1946. On February 2, 1966, the court appointed Honorable William L. Wiesman as guardian *ad litem* for Dennis.

On February 8, 1966, Mr. Nall obtained *alias* summons for Dennis Carl Lanham, and service of that process was accomplished when the sheriff delivered copies of the process to Dennis on February 12, 1966.

On February 10, 1966, the guardian *ad litem* filed a motion to set aside the order appointing him as such, noting that Dennis was over eighteen years of age when the suit was filed and calling attention to KRS 2.015 and this court's decision in Commonwealth v. Hallahan, Ky., 391 S.W.2d 378, decided May 28, 1965. Since Dennis was over eighteen, he was not an "infant" within the meaning of KRS 2.015 (as enacted in 1964, effective January 1, 1965, and fixing the age of majority at eighteen years instead of twenty-one years as had theretofore been true).

Without further detailing the pleadings, motions, hearings, and orders which followed, it suffices to say that the trial court ultimately ruled that the one-year statute of limitation barred the claims against Dennis, because the actions against him had not been "commenced" within the statutory period with "the issuance of summons or warning order thereon in good faith."

CR 3 provides:

"A civil action is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith."

Language substantially the same is contained in KRS 413.250 pertaining to the "commencement" of an action as respects tolling the running of a statute of limitation.

This court has dealt with the problem in many previous cases. Some of the decisions touching the question are: Commonwealth, Dept. of Highways v. Parker, Ky., 394 S.W.2d 899; Roehrig v. Merchant's and Businessmen's Mutual Ins. Co., Ky., 391 S.W.2d 369; Wooton v. Begley, Ky., 305 S.W.2d 270; Hausman's Adm'r v. Poehlman, 314 Ky. 453, 236 S.W.2d 259, 27 A.L.R.2d 233; Louisville & Nashville Railroad Co. v. Little, 264 Ky. 579, 95 S.W. 2d 253. Many other cases are discussed

in those just cited. The present case is similar in factual background to *Parker, Roehrig,* and *Hausman's Adm'r,* cited above.

In this case the lawyer for the plaintiffs was mistaken as to the proper method of service of process upon an unmarried defendant, over eighteen but less than twenty-one years of age. Until the effective date of KRS 2.015 (January 1, 1965), the method of service first undertaken was the appropriate one. There were doubts in many circles concerning the proper construction of KRS 2.015. See, for example, Commonwealth v. Hallahan, Ky., 391 S.W. 2d 378, and note legislative action clarifying KRS 2.015 in 1968.

As noted, plaintiffs' lawyer sought and obtained the appointment of a guardian *ad litem before* the limitation period expired. He obtained *alias* process which was served on Dennis just a few days later. It may be that the lawyer should have made more diligent research of the comparatively recent change in the law, but his failing in this respect is not equatable with a lack of "good faith." In *Parker* the lawyer mistakenly sought to obtain service upon the Workmen's Compensation Board by having summons served on the Attorney General, although KRS 342.285(1) plainly directs that such service should be on the Executive Secretary of the Board. That deviation was not "bad faith," the court held.

In *Roehrig* the plaintiff's lawyer sought to effect service of process on a foreign insurance company by causing a copy of the summons to be delivered to the Louisville agent of the company. KRS 304.-094(1) required process in such cases to be served on the Commissioner of Insurance. It was held that the action was commenced in good faith, despite the failure to adopt the precise course required.

The court found "good faith" issuance of process in *Hausman's Adm'r,* even though service upon a nonresident motorist was at first abortive because counsel had furnished an incorrect mailing address.

In the cases at bar there was less than perfect diligence, but not an absence of the required "good faith." There was nothing performed or omitted which evinces any basis for holding that plaintiffs' counsel acted in less than "good faith."

In *Roehrig* it was stated:

"The rule seems to be that if, when the summons was issued, the plaintiff had a bona fide, unequivocal intention of having it served presently or in due course or without abandonment, the summons was issued in good faith." Id. 391 S.W.2d at page 371.

For the reasons stated, the court holds that the actions were timely commenced against Dennis Carl Lanham, and the trial court's contrary ruling was erroneous.

It remains to determine whether the trial court properly directed a verdict in favor of Charles Miller, the employer of Dennis. For the most part, the facts which govern this determination are undisputed, and are:

Miller was the sole proprietor of a used-car sales lot in Owensboro. Dennis Lanham was his only employee. Dennis was employed at a fixed weekly salary, and his working hours were from 8 a. m. to 5 p. m. In describing Dennis' duties, Miller deposed:

"Well, he was helping around the lot. He just did anything that was to be done, if I had cars that needed to be repaired or go with people when he showed cars or whatever might be for him to do."

Miller stated that Dennis had permission to drive the vehicles on the lot if the driving was incident to Miller's business, but no such permission was extended as to driving any of the vehicles for Dennis' personal purposes.

Miller was absent from Kentucky when the accident happened. Dennis was in

sole charge of the lot. Shortly before 5 p. m. Dennis drove one of Miller's trucks from the lot, intending to see Dennis' friend at a factory nearby. Dennis explained that he had planned to arrange to have the friend come by the lot and give Dennis a ride home. It was Dennis' plan to return the truck to the lot after completing these arrangements. The accident occurred before he reached his friend.

■ It is unnecessary to determine whether Dennis had Miller's "permission" to use the truck or to consider whether such "permission," if any, was express or implied. The critical and dispositive question is whether there was evidence sufficient to create a jury issue as to whether Dennis was acting within the scope and course of his employment by Miller. There was no evidence tending to show that Dennis was performing any act for Miller or attempting to perform any duty owed by him to his employer. The most that can be made of the evidence is that Dennis was making the trip in order to arrange transportation for himself, to his own home, to be utilized after working hours. This falls short of creating a submissible issue on the question of whether there was a master-servant relationship sufficient to invoke the rule of *respondeat superior*. This principle was reiterated in Johnson-Kitchens Ford Corporation v. Shifflet, Ky., 462 S.W.2d 430, in which a host of decisions and texts are cited in support of it.

The appellants contend that the ruling in Sam Horne Motor and Implement Company v. Gregg, Ky., 279 S.W.2d 755, is authority in their behalf on the master-servant question. There a salesman, employed by a used-car lot owner, took a vehicle home, with a view to demonstrating the car to a prospective buyer the next morning. There was evidence that the company rule forbade demonstration of cars after 5:30 p. m. The court held that a submissible issue was created as to existence of a master-servant relation-

ship, since there was ample evidence that the employee's use of the car at the time of the accident was of vital importance in furthering the business of the employer. But, there the evidence showed that the tort-feasor intended to and purported to act in furtherance of the employer's business. There is no such showing here.

In Wilson v. Deegan's Adm'r, 282 Ky. 547, 139 S.W.2d 58, the court noted the usual rule in this language:

"It must be conceded at the outset that the master is not liable for the negligent acts of his servant while driving the master's car for his own purposes. Ordinarily, the master's liability rests upon the doctrine of respondeat superior. Unless the servant at the time of the accident was acting within the scope of his employment and in the furtherance of the master's business the latter is not liable. (Citations omitted.)" Id. 139 S.W.2d 60.

The court recognized an exception to the rule in that case, however. There the master loaned a car to the servant to enable the servant to make a speedy round trip to and from lunch. The court concluded that in those circumstances a submissible issue was made on the master-servant relationship, since the jury could infer that the overall purpose of using the car was in furtherance of the master's purposes. If such a circumstance were present in these cases, the rule followed in *Wilson* would apply. But, nothing in this record suggests that the master's interests were being promoted by Dennis' undertaking to procure transportation to his home after working hours. That transportation was not expected to enlarge the time of Dennis' availability at the used-car lot, as was the case in *Wilson*. The trial court correctly directed a verdict for Miller in these circumstances.

The judgment dismissing the complaints against Charles Miller is affirmed; the

judgment dismissing the complaints against Dennis Carl Lanham is reversed for proceedings consistent with the opinion.

All concur.