**Angelete G. WILDER, Appellant,**

v.

**Shirley Jones NOONCHESTER, and Edward Noonchester, Jr., Appellees.**

**No. 2001–CA–002674–MR.**

Court of Appeals of Kentucky.

Aug. 1, 2003.

Angelete G. Wilder, Middlesboro, KY, pro se.

Gerald L. Greene, Greene & Lewis, Pineville, KY, for appellee.

Before COMBS, McANULTY, and SCHRODER, Judges.

McANULTY, Judge.

Angelete G. Wilder appeals the circuit court's dismissal of her personal injury claims against Shirley Jones Noonchester and Edward Noonchester, Jr. in an automobile accident case. The court dismissed her claim against the Noonchesters because she failed to amend her complaint to

14. *Giuliani, supra,* at 321.

name them as parties within the statute of limitations prescribed by Kentucky Revised Statutes (KRS) 304.39–230(1). The court found that the statute of limitations began to run on the date of the last PIP payment. Wilder argues that the statute of limitations began to run on the date that the medical service provider deposited the check issued by the PIP provider. Finding no error, we affirm.

Angelete G. Wilder (Wilder) sustained injuries when her automobile struck one of two horses standing in a public highway in Bell County, Kentucky on May 25, 1999. The record in the court below established that Kentucky Farm Bureau Insurance Company made Wilder's final Personal Injury Protection (PIP) payment to the medical service provider, PT of Pineville, on October 25, 1999. Subsequently, Wilder filed a complaint on May 25, 2000, naming Stephen F. Jones, owner of the horses, as the sole defendant.

After initial discovery, Wilder sought to amend her complaint to include Shirley Jones Noonchester and Edward Noonchester, Jr. (Noonchesters), owners of the land where the horses were maintained, as parties to the action. On October 29, 2001, the trial court granted Wilder's motion to amend her complaint, and Wilder filed an amended complaint the following day.

The Noonchesters moved to dismiss the amended complaint alleging that it was barred by the limitations provision of KRS 304.39–230. Wilder did not file a response to the Noonchester's motion to dismiss. The trial court found that Wilder's cause of action against the Noonchesters was barred by the statute of limitations and issued an order of partial dismissal with prejudice in favor of the Noonchesters. This appeal followed.

The sole issue on appeal is whether the two-year statute of limitations under KRS 304.39–230 had run. Appellant alleges

that the mere issuance of a draft by a PIP provider does not represent payment of benefits under KRS 355.4A–401, and therefore, she filed her amended complaint within the statutory period. We disagree.

Notwithstanding the fact that Wilder did not properly preserve her argument for our review because she failed to respond to the Noonchester's motion to dismiss, even if we now consider her argument on the merits, her position is fundamentally flawed. *See Barnard v. Stone,* Ky., 933 S.W.2d 394, 396 (1996) (holding that question not raised at the trial court level was not properly preserved for appellate review). The applicable statute for determining the limitations period for filing a lawsuit in this case is KRS 304.39–230.

Under KRS 304.39–230, a provision of the Motor Vehicles Reparations Act, if reparation benefits, such as PIP payments, have been paid, an action for further benefits "may be commenced not later than two (2) years after the last payment of benefits." Thus, KRS 304.39–230 extends the limitations period from the one-year statute of limitations for personal injury actions to "two years for actions 'with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance or use of a motor vehicle,' when not 'abolished' by the Act[.]" *Bailey v. Reeves,* Ky., 662 S.W.2d 832, 833 (1984) (citing the Motor Vehicle Reparations Act, KRS Chapter 304, Subtitle 39). Moreover, KRS 304.39–230 would be applicable to Wilder's cause of action against the Noonchesters even though, as owners of the land, they are nonmotorists. *See id.* at 835. Accordingly, the date the PIP provider made the last payment to the medical service provider begins the running of the two-year statute of limitations. *See Lawson v. Helton Sanitation, Inc.,* Ky., 34 S.W.3d 52, 57 (2000). In

other words, the date the PIP provider issued the check is the date the PIP provider "made" the payment. *See id.* at 56–7.

In this case, the date that the PIP provider made the payment was October 25, 1999. Thus, the statute of limitations ran on October 25, 2001; and, since Wilder did not amend her complaint until October 30, 2001, it is time-barred.

Wilder directs us to KRS 355.4A–401 in support of her proposition that the statute of limitations began to run on November 2, 1999, the date the service provider deposited the check issued by the PIP provider; however, Wilder's reliance on KRS 355.4A–401 in determining the date of payment is improper. "Payment orders," as defined in KRS Chapter 355 (Kentucky's Uniform Commercial Code), Article 4A, refer to direct funds transfers, commonly known as "wire transfers," between banking institutions rather than payment of medical bills by drafts issued by insurers.[1]

In determining the appropriate date as to the statute of limitations, we may only consider evidence contained in the record and introduced to the trial court for its review. *See Barnard,* 933 S.W.2d at 396. In this case, Wilder attempted to introduce evidence through her Civil Appeal Prehearing Statement as well as in her January 25, 2002 brief suggesting that the actual date of her final PIP payment was November 2, 1999, rather than October 25, 1999, as established by the record before the trial court. We may only consider the PIP worksheet filed below that establishes that Kentucky Farm Bureau's last date of payment to Wilder was October 25, 1999. Therefore, the trial court properly concluded that Wilder's amended complaint was barred by KRS 304.39–230.

ALL CONCUR.

---

1. *See generally* David J. Leibson & Richard H. Nowka, The Uniform Commercial Code of Kentucky § 5.1 (2d ed. 1992) ("In the funds transfer process, no such tangible item [check] is involved, and no money of the paying party is actually transferred. Rather, by means of payment orders, and acceptance of such orders by the banks involved, the account of the obligor in its bank is depleted by the amount of the obligation, and the account of the obligee is enhanced by the same amount.")