Bonita BEAUMONT, Appellant

v.

Muluken ZERU, Appellee

2013–SC–000489–DG

Supreme Court of Kentucky.

RENDERED: APRIL 2, 2015

Rehearing Denied June 11, 2015

COUNSEL FOR APPELLANT: Edward C. Airhart, P.S.C., Darren Paul Mayberry, Airhart & Associates

COUNSEL FOR APPELLEE: William D. Kemper, Gwin, Steinmetz & Baird, PLLC

OPINION OF THE COURT BY JUSTICE KELLER

The Jefferson Circuit Court granted summary judgment to Muluken Zeru, finding that Bonita Beaumont had not filed her complaint within the two year statutory period provided in Kentucky Revised Statute (KRS) 304.39–230(6). Beaumont appeals, arguing that the circuit court and the Court of Appeals incorrectly determined when her statutory period began to run. Having reviewed the record and the arguments of the parties, we reverse and remand.

## I. BACKGROUND.

On April 24, 2008, Zeru ran a stop sign and struck Beaumont's vehicle, causing significant physical injuries. Thereafter, Beaumont sought and received basic reparations/personal injury protection benefits (hereinafter PIP) from her insurer, Cincinnati Insurance Company (CIC).

On July 29, 2010, Beaumont's attorney wrote to CIC to find out when CIC had made its last PIP payment. A representative from CIC responded and reported that CIC had made "a payment" on September 25, 2009 to Kentucky Orthopedic Rehabilitation. Beaumont filed her com-

plaint on September 21, 2011, within two years of the date provided by CIC.

Thereafter, Zeru filed a motion for summary judgment arguing that Beaumont had not timely filed her complaint. In support of his motion, Zeru filed an August 13, 2009 letter from CIC to Jewish Hospital, stating that CIC was only making partial payment of the hospital's bill because that payment exhausted Beaumont's PIP benefits.

A review of CIC's records revealed that the issue herein arose from a $400 check that CIC issued to Springhurst Physical Therapy (the assumed name of Kentucky Orthopedic Rehabilitation) on March 17, 2009. Springhurst lost that check and, although it is not clear how, notified CIC on or near September 15, 2009 of the lost check. CIC issued a stop payment order on the March 17, 2009 check and, on September 25, 2009, issued a replacement check.

The circuit court, without explanation, dismissed Beaumont's claims with prejudice. The Court of Appeals, relying on *Wilder v. Noonchester*, 113 S.W.3d 189 (Ky.App.2003) and *Wehner v. Gore*, 2006 WL 2033894, 2005–CA–000689–MR (Ky. App.2006) affirmed the circuit court. In doing so, the Court of Appeals followed the precedent in *Wilder* that a PIP payment is made when the insurer issues a check and the precedent in *Wehner* that a replacement check does not constitute making payment. Therefore, the Court concluded that the last payment was made in August 2009, when CIC sent a partial payment to Jewish Hospital.

## II. STANDARD OF REVIEW.

■ Statutory construction is a question of law, which we review *de novo*. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky.2012).

In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration.... We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.

*Id.* quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011).

## III. ANALYSIS.

KRS 304.39–230(6) provides in pertinent part that "[a]n action for tort liability ... may be commenced not later than two (2) years after ... the last ... [PIP] payment made by any reparation obligor...." The legislature did not set forth in the Act what constitutes "payment," and, although the Court of Appeals has dealt with this issue, this is a case of first impression for this Court.

■ Beaumont argues that we should look to KRS 355.3 *et seq.*, the Uniform Commercial Code (UCC), to determine that payment by check has not been made until the check has been presented and honored, *i.e.* paid. Zeru argues that, because CIC made payments to Beaumont's health care providers at her direction, the payment principles set forth in the UCC "simply do not provide a useful or relevant framework around which to build an approach for determining" when payment of PIP has been made. We disagree with this assessment by Zeru; however, we agree with Zeru that payment for PIP purposes occurs, in the normal course, when the reparation obligor issues a check.

As noted above., the MVRA does not set forth what constitutes payment when the

reparations obligor issues a check to discharge its obligation; therefore, we must look elsewhere. As set forth in the UCC, a check is "[a] draft ... payable on demand and drawn on a bank." KRS 355.3–104(6)(a). "[I]f a ... check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, ... [and] suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check." KRS 355.3–310(2)(a). According to Beaumont, the preceding means that payment is not made until the obligation is discharged, i.e. the date the check has been paid. However, this reading of the UCC, in the context of the MVRA, ignores the word "suspended." We believe that a better reading of the UCC as applied to the MVRA is that, once the check has been paid, the obligation is no longer in suspension and date of "payment" for MVRA purposes relates back to the date the suspension began, i.e. the date the check was issued. This is in keeping with *Wilder*, which we believe was a sound decision. It provides the certainty that both parties say they seek and it provides a straight forward mechanism to use to determine when the statute of limitations begins to run—the PIP log. Furthermore, unlike relying on when the check was actually paid, the preceding does not require the parties to obtain banking records from the reparations obligor or from the recipient of the check. However, we cannot stop our analysis with the preceding, which works well when checks are issued, presented, and honored, because that is not what occurred here.

Here, a check was issued in March 2009 and, because the check was either lost or not delivered, that check was never presented or honored. According to Beaumont, that check therefore did not constitute payment and the earliest payment could have been deemed made was when the replacement check was issued. Zeru argues that, pursuant to the Court of Appeals in *Wehner*, the date the replacement check was issued is irrelevant and it is the date of the initial check that controls.

In *Wehner*, the reparations obligor issued the final PIP check on December 13, 2000 to a medical provider and then closed its file. The provider contacted the reparations obligor and stated that it either had not received the check or the check had been lost. The obligor stopped payment and issued a replacement check on August 13, 2001. Wehner filed her complaint on July 14, 2003. The trial court granted summary judgment in favor of the defendant because Wehner had not filed her complaint within two years of December 13, 2000. The Court of Appeals affirmed, holding as follows:

> Final payment is the date the last check is cut, dated, or "made." That date was December 13, 2000. The August 13, 2001, check was not a check "made" for additional services, but a replacement check between [the provider] and [the obligor]. Payment on December 13, 2000, was final payment "made" as far as Wehner is concerned. There is no contrary authority, thus, we agree with the circuit court's interpretation.

We disagree with the holding of the Court of Appeals in *Wehner* because it is internally inconsistent. The Court of Appeals states that "the final payment is when the last check is cut, dated, or 'made,'" but then concludes that the check dated August 13, 2001 was, apparently, "cut, dated, or 'made'" on December 13, 2000. The Court of Appeals based this apparent conclusion on the fact that the

August 2001 check was for services that had been rendered in December not for "additional services." We find nothing in the MVRA that indicates the date payment is made is tied to when services were rendered.

We find the better analysis, in part, was made by the Pennsylvania Supreme Court in *Romaine v. W.C.A.B. (Bryn Mawr Chateau Nursing Home)*, 587 Pa. 471, 901 A.2d 477 (2006). In *Romaine*, the Court was required to determine when final payment was made in a workers' compensation case. The Court, after undertaking a lengthy analysis of Pennsylvania's version of the UCC, concluded that issuance of a check is a conditional payment. Payment does not become final until the check is honored. Once a check has been honored, the date of payment relates back to the date the check was delivered. While we disagree that the date of a PIP payment relates to date of delivery, the general rule works for the vast majority of transactions because the vast majority of transactions unfold normally, *i.e.* a check is issued, it is deposited in the recipient's account, the issuer's bank honors the check, and funds are transferred.

As noted above, this matter did not unfold normally; however, the same legal theory applies. When CIC issued a check for $400 to Springhurst in March 2009, that check suspended the obligation CIC had to pay Springhurst for services it rendered to Beaumont. However, because that check was either not received or was lost, Springhurst never presented it for payment, CIC did not thereby satisfy its obligation, and $400 remained in Beaumont's PIP account. When CIC issued the September 2009 check, it did so to satisfy its obligation to Springhurst, which remained outstanding. It was not until the September 2009 check was paid that the obligation was satisfied, thus the Sep-

tember 2009 check was the last "payment" of PIP. We recognize that this is contrary to the holding by the Court of Appeals in *Wehner*. However, we note that the Court of Appeals simply concluded, with no particular reasoning, that the date a payment is made with a replacement check relates back to the date of the original check. There is no basis in the MVRA for this conclusion and the Court of Appeals cited no basis elsewhere in the law for treating a replacement check differently from any other check. Furthermore, by treating a replacement check the same as any other check, we provide the certainty that both Zeru and Beaumont seek. The date of the last payment is the date the last check is sent, whether that check is the initial check or a replacement check.

We recognize Zeru's arguments that: (1) timing payment to anything other than the insurer's PIP log will wreak havoc and make it necessary for parties to invade the banking records of insurers and providers; (2) he should be able to rely on statements by Beaumont's insurer that her PIP benefits were exhausted in August 2009; (3) he should not be disadvantaged because Beaumont's insurer made an error; and (4) *stare decisis* requires us to follow the opinions of the Court of Appeals. We address each in turn.

Our holding does tie payment to the PIP log and does not necessitate the invasion of bank records by either party. It simply recognizes the reality that a check that is not presented and ultimately honored does not represent payment.

As to reliance on CIC's "erroneous" statement, we find it somewhat ironic that Zeru argues he should be able to rely on CIC's statement to Jewish Hospital but that Beaumont should not be able to rely on CIC's statement to her. Furthermore, based on our holding today, CIC's statement that it made a PIP payment in September was not erroneous.

We agree that Zeru should not be disadvantaged if CIC had made an error. Likewise, he should not be given an advantage based on any such error.

■ With regard to *stare decisis*, we are not bound by the opinions of the Court of Appeals, particularly by unpublished opinions of the Court of Appeals. Kentucky Rule of Civil Procedure (CR) 76.28(4)(c); *Commonwealth v. Wright*, 415 S.W.3d 606, 613 (Ky.2013). Furthermore:

> "[T]he doctrine of *stare decisis* does not commit us to the sanctification of ancient [or relatively recent] fallacy." While we recognize this Court should decide cases "with a respect for precedent," this respect does not "require blind imitation of the past" or unquestioned acceptance ad infinitum. Rather, in many ways, respect for precedent *demands* proper reconsideration when we find sound legal reasons to question the correctness of ... prior analysis.

*Morrow v. Commonwealth*, 77 S.W.3d 558, 559 (Ky.2002) (footnotes omitted and emphasis in original). As set forth above, we agree with the opinion of the Court of Appeals in *Wilder*, and thus show no disrespect for published precedent. We only disagree with the unpublished opinion of the Court of Appeals in *Wehner*, which may have some persuasive value but no precedential value. Thus our disagreement with that opinion also shows no disrespect for precedent.

### IV. CONCLUSION.

For the foregoing reasons, we reverse the trial court's summary judgment in favor of Zeru and remand for additional proceedings.

All sitting. All concur.