NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0235n.06

Case No. 20-6051

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CHRISTOPHER D. WILSON, | ) | **FILED**<br>May 10, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| ORVILLE J. BUTZIN, | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: WHITE, NALBANDIAN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Christopher Wilson sued Orville Butzin in state court for injuries resulting from a motor vehicle accident. Wilson's suit, however, ran into trouble right out of the gate: the summons issued to Butzin was returned as undeliverable. So too were two other attempts at service. More than four years after the accident, Wilson finally completed service. After removing the case, Butzin moved for summary judgment, contending that, under Kentucky law, Wilson had not commenced the action within the applicable statute of limitations. The district court agreed and granted judgment in Butzin's favor. We affirm.

I.

Wilson and Butzin were involved in a motor vehicle accident on January 7, 2016. Nearly two years later, on December 15, 2017, Wilson filed suit against Butzin in Kentucky state court.

Wilson's complaint alleged that Butzin's negligent driving caused Wilson to experience bodily injuries and to incur medical expenses and lost wages. Although at the time of the accident Butzin was driving a truck owned by his employer (a service provider for FedEx Ground), neither corporation was named as a defendant in the complaint.

The accident report prepared by the police listed Butzin as residing in Lexington. So Wilson directed a summons to Butzin at that address. But there was one problem: Butzin no longer lived there. When the summons was returned as undeliverable, the court clerk added an entry to the case's docket indicating that service had failed but listed a forwarding address for Butzin in Indiana.

Wilson attempted service again in May 2019 to the same Lexington address. Wilson reused that address because, he says, he found a White Pages report showing Butzin "still maintained a presence in Lexington," with Butzin's Facebook profile indicating the same. That summons was also returned, this time with a note indicating that the "subject does not live at this address." Nine months later, Wilson again attempted to serve Butzin in Kentucky. Although not entirely clear, it appears Wilson tried to serve Butzin in Clark County, where the accident occurred, while still using Butzin's former Lexington address, which is in Fayette County. In any event, like its predecessors, that third summons was also returned unexecuted.

Utilizing Butzin's Indiana address, Wilson eventually was able to effectuate service on April 23, 2020. Upon receiving the summons, Butzin promptly filed an answer and removed the case to federal court, invoking our diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Butzin then moved for summary judgment on the ground that Wilson failed to effectuate service within the applicable two-year limitations period. Wilson responded that he had acted in good faith in his efforts to serve Butzin, thereby excusing any delay in service. According to Wilson, on January

2

4, 2018, he received a notice from Butzin's "agent," MGM Adjusters, explaining that FedEx Ground was managing the matter and acknowledging receipt of the summons and complaint "filed against our contracted service provider and its driver." MGM also requested an extension to "answer the complaint you filed," which Wilson granted. Those statements, to Wilson's mind, provided reasonable grounds to believe that Butzin's "agent" had accepted service on Butzin's behalf. Wilson also engaged in settlement negotiations with MGM and FedEx, who represented to Wilson that they would refer the matter to counsel if they were unable to reach an agreement. Only after settlement negotiations failed (and with no answer to the complaint filed) did Wilson again attempt to serve Butzin.

The district court sided with Butzin. It held that while Wilson filed his suit within the applicable limitations period, he nonetheless failed to commence the action during that period because he abandoned any good-faith effort to serve the first summons. Accordingly, the district court granted Butzin summary judgment.

## II.

Before turning to the issues underlying service of process, we begin with Wilson's contention that Butzin waived his statute-of-limitations defense by failing to raise it in his answer. The district court found that the issue was not waived, a determination we review for an abuse of discretion. *Rogers v. IRS*, 822 F.3d 854, 856 (6th Cir. 2016).

Today's case proceeds on the basis of diversity jurisdiction, with the claims at issue thus arising under state law. In that instance, "state law governs [whether a] defense[] must be pleaded affirmatively to avoid waiver," but "[f]ederal law governs whether [the] defense has been waived in federal court." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 680 (6th Cir. 2018). Starting with the state law question, under Kentucky law, the statute of limitations is a defense that

must be affirmatively pleaded. Ky. R. Civ. P. 8.03; *see Underwood v. Underwood*, 999 S.W.2d 716, 720 (Ky. Ct. App. 1999). As a result, we must determine whether, as a matter of federal law, Butzin waived his statute-of-limitations defense before the district court.

In federal civil proceedings, a defendant must assert a statute-of-limitations defense in her first responsive pleading. *See* Fed. R. Civ. P. 8(c). Failing to do so can ordinarily constitute waiver of the defense. *Brent*, 901 F.3d at 680. But "[a] district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time" in a later motion (such as a summary judgment motion) "if doing so does not result in surprise or prejudice to the plaintiff." *Rogers*, 822 F.3d at 856 (citation omitted); *see Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Wilson does not claim to have been surprised by Butzin's limitations defense, but he does claim that he was prejudiced by the defense's late assertion. That turns our attention to the issue of prejudice.

Prejudice exists if the assertion of a new defense would "require the [plaintiff] to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Rogers*, 822 F.3d at 857 (quoting *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994)). As an initial matter, we are skeptical that Butzin raised a statute-of-limitations defense in his answer. At best, Butzin asserted that Wilson's complaint is "barred by the provisions of the Kentucky Motor Vehicle Reparations Act, as contained in Subtitle 39 of Chapter 304 of the Kentucky Revised Statutes." Subtitle 39, in turn, contains 44 different sections, a couple of which perhaps could be construed as a bar to Wilson's action. We need not parse those 44 sections, however, for even assuming Butzin failed to assert a statute-of-limitations defense in his answer, Wilson fails to demonstrate any prejudice from Butzin waiting to do so until his summary judgment motion. *See Rogers*, 822 F.3d at 856–57. Butzin filed that motion promptly—just seven

weeks after he filed his answer. Wilson, in turn, addressed Butzin's statute-of-limitations defense in his response, his first opportunity to do so. Add in the fact that no formal discovery has occurred to date, and it is difficult to see how this sequence of events prejudiced Wilson, and thus how the district court abused its discretion. *See id.* at 857 (finding no prejudice, despite the IRS waiting 15 months to raise a defense, when the plaintiff did not need to expend additional resources to conduct discovery and had an opportunity to respond); *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003) (finding no prejudice when "the plaintiffs had a fair opportunity to respond to the government's statute of limitations argument"); *Smith*, 117 F.3d at 969 (finding no prejudice when the plaintiff was able to "fully respond" to defenses raised for the first time in a second summary judgment motion).

Wilson counters that, even if Butzin did not waive the defense, as a matter of equity, Butzin should be estopped from asserting the defense. Under Kentucky law, "[e]quitable estoppel precludes a defendant, because of his *own* wrongdoing, from using the statute of limitations as a defense." *See Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (emphasis added); *see also Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." (internal quotation marks and citation omitted)); *Antioch Co. Litig. Tr. v. Morgan*, 644 F. App'x 579, 583 (6th Cir. 2016) (applying Ohio's equitable estoppel law to a state-law claim). We are aware of no wrongdoing by Butzin, however, that warrants this remedy. Wilson purports to have believed that Butzin received service based on MGM's notice that it had received the summons and complaint "filed against our contracted service provider and its driver," which is why, according to Wilson, he did not "pursu[e] additional efforts to serve [Butzin] earlier." But how are MGM's actions attributable to Butzin? There is no evidence that Butzin granted MGM authority to accept service on his behalf. *See*

5

*Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825, 830 (Ky. Ct. App. 2014) ("Actual authority arises from a direct, intentional granting of specific authority from a principal to an agent."). Nor, as Wilson concedes, did Butzin hold out MGM as his agent. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 499 (Ky. 2014) ("Apparent authority . . . is the authority the agent is held out *by the principal* as possessing." (emphasis added)). Absent evidence that MGM possessed actual or apparent authority to act as Butzin's agent, MGM's actions cannot be ascribed to Butzin. *Cf. Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 594 (Ky. 2012) (explaining that a principal is bound by an agent's actions when the principal manifests to a third party that the agent is authorized to act on her behalf). We thus see no basis to preclude Butzin from asserting a statute-of-limitations defense.

III.

The district court granted summary judgment to Butzin due to Wilson's failure to commence this action within the applicable limitations period. As the moving party, Butzin is entitled to summary judgment if he shows "there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we consider the evidence and draw all reasonable inferences in Wilson's favor. *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (2020). And we review the district court's grant of summary judgment de novo. *Libertarian Party of Ohio v. Wilhelm*, 988 F.3d 274, 278 (6th Cir. 2021).

Kentucky's Motor Vehicle Reparations Act sets the applicable limitations period for claims arising out of a motor vehicle accident. *Interlock Indus., Inc. v. Rawlings*, 358 S.W.3d 925, 927–28 (Ky. 2011) (explaining that the Act applies to "accidents occurring in [Kentucky] and arising from the ownership, maintenance or use of a motor vehicle" (emphasis and citation omitted)); *see Atl. Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir. 1996) (explaining that "[t]he

statute of limitations of the forum state applies in federal diversity cases"). Under the Act, Wilson was required to commence this action within two years of "the date of issuance of the last basic or added reparation payment made by any reparation obligor." Ky. Rev. Stat. Ann. § 304.39-230(6); *see Beaumont v. Zeru*, 460 S.W.3d 904, 906 (Ky. 2015). With the last personal injury protection payment to Wilson having issued from his insurer on March 8, 2016, Wilson was required to commence this lawsuit by March 8, 2018.

Kentucky law governs whether Wilson timely commenced this action. *See Powell v. Jacor Commc'ns Corp.*, 320 F.3d 599, 602 (6th Cir. 2003); *Eades v. Clark Distrib. Co.*, 70 F.3d 441, 442–44 (6th Cir. 1995). In Kentucky, a civil action commences when "the first summons or process [is] issued in good faith from the court having jurisdiction of the cause of action." Ky. Rev. Stat. Ann. § 413.250. Good faith, in turn, "require[s] a contemporaneous intention on the part of the initiating party to diligently attend to the service of the summons." *Isaacs v. Caldwell*, 530 S.W.3d 449, 456 (Ky. 2017). Put differently, good faith requires "a bona fide intention to have the summons filled out and signed by the clerk, accompanied by a bona fide, unequivocal intention to have it served or proceeded on presently or in due course or without abandonment." *Id.* (emphasis omitted) (quoting *Louisville & N.R. Co. v. Little*, 95 S.W.2d 253, 255 (Ky. 1936)). "The taking out of summons is presumptive evidence of an intention to have it served in due course, but that presumption may be rebutted by the facts." *Little*, 95 S.W.2d at 255.

With this framework in mind, we note that Wilson, to his credit, started off on the right foot. Within the limitations period, he attempted to serve Butzin on December 15, 2017, by using the (albeit outdated) Lexington address listed on the accident report. But having made that initial, good-faith effort, Wilson maintained the obligation "to diligently attend to the service of the summons" and to show "unequivocal intention to have it served . . . without abandonment."

*Isaacs*, 530 S.W.3d at 456 (emphasis and quotation omitted). And on those metrics, Wilson does not fare as well. A week after Wilson mailed the summons, it was returned as undeliverable. The court clerk posted a docket entry indicating that service was unsuccessful and listing a forwarding address for Butzin in Indiana. Yet over the next 17 months, during which the limitations period expired, Wilson made no effort to have the summons reissued to that address. By failing to reattempt service with any diligence, Wilson abandoned his intention to serve Butzin, meaning he did not "attend to the service of the summons" in good faith. *See id.* (concluding that the plaintiff lacked good faith by failing to act "diligently with a substantial effort to secure service of the summons upon the [defendant]").

Instructive here is the Kentucky Court of Appeals' (then the Commonwealth's high court) decision in *Louisville & N.R. Co. v. Little*. In *Little*, the plaintiff obtained a summons within the limitations period but did not attempt to effectuate service until 13 months later, after the applicable statute of limitations period had ended. 95 S.W.2d at 254. That more than year-long postponement of service revealed a lack of good faith in issuing the summons, meaning the case was barred by the statute of limitations. *Id.* at 255. To be sure, this case differs from *Little* in that Wilson at least tried (yet failed) to serve Butzin when he filed this lawsuit. But Wilson's initial use of an incorrect address does not excuse his subsequent idleness. Inadvertently sending an initial summons to an incorrect address or defendant might well satisfy this good-faith standard when the plaintiff promptly corrects the error upon learning of the mistake. *See, e.g.*, *Crowe v. Miller*, 467 S.W.2d 330, 332–33 (Ky. 1971) (finding good faith when the plaintiff issued a corrected summons within two weeks of learning mistake); *Roehrig v. Merchs. & Businessmen's Mut. Ins. Co.*, 391 S.W.2d 369, 370–71 (Ky. 1965) (correcting within eight days); *Ky. Horse Racing Comm'n v. Motion*, 592 S.W.3d 739, 746 (Ky. Ct. App. 2019) (correcting within two weeks); *Jones v. Baptist Healthcare*

*Sys., Inc.*, 964 S.W.2d 805, 807–08 (Ky. Ct. App. 1997) (correcting within two months). But that does not describe Wilson, who made no attempt to reissue a summons until well over a year after the initial service was returned as undeliverable (and even then, to the same address and not to Butzin's Indiana address). Especially with the Indiana address available on the court's electronic docket, whether, as Wilson contends, "the Sheriff or Clerk" failed to affirmatively provide that address to counsel is irrelevant here. *Cf. Yeschick v. Mineta*, 675 F.3d 622, 629 (6th Cir. 2012) (noting that "parties have an affirmative duty to monitor the dockets"); *Liberty Nat'l Bank & Tr. Co. v. Kummert*, 205 S.W.2d 342, 343–44 (Ky. 1947) ("It is the universal practice of the members of [a circuit court] bar to check this docket each week.").

Equally unavailing is Wilson's attempt to justify the delay of service on the basis that he fairly believed, given MGM's acknowledgment of receipt of the summons, that Butzin's agent had accepted service on Butzin's behalf. True, under Kentucky law, a plaintiff can potentially show good faith when she has a legitimate excuse for failing to issue process promptly yet demonstrates her intent to have a summons served in due course. *See Rucker's Adm'r v. Roadway Express, Inc.*, 131 S.W.2d 840, 843 (Ky. 1939) (holding that a six-week delay in service caused in part by counsel taking three-weeks leave to attend to his ill spouse, though "undoubtedly" negligent, did not negate good faith because he still showed intent to issue a summons in due course). *But see id.* ("A mere negligent delay, if of sufficient length of time, may have the effect of indicating a lack of good faith in having the process issued."). But Wilson's apparent belief that it was unnecessary to "resume[] efforts of service" until after settlement negotiations with Butzin's purported agent failed does not meet that standard. From the start, Wilson took no steps to have the court reissue the summons in the two weeks between the initial summons's return and MGM's acknowledgment of the summons, which undermines his emphasis on MGM's perceived role as Butzin's agent. So

9

too does the fact that Butzin himself did not hold out MGM as his agent. *See Ping*, 376 S.W.3d at 594 ("[A]pparent authority arises not from the purported agent's manifestations of authority, but rather from manifestations by the principal."). And Wilson's belief is called into further question when one realizes that, as late as January 2020, Wilson's counsel asked MGM whether FedEx would "accept service, and if not have you got a good address for Orville Butzin." If Wilson sincerely believed that he had effectuated service on Butzin through MGM, why would he have reattempted service after settlement negotiations with MGM and FedEx failed? For all of these reasons, we agree with the district court that Wilson abandoned his initial good-faith intent to have a summons issued to Butzin and therefore failed to timely commence the action within the applicable limitations period.

Falling short on these fronts, Wilson alternatively suggests that the statute of limitations was equitably tolled when he first directed the summons to Butzin's former Lexington address. That argument, however, fares no better than the others. To avail himself of equitable tolling, Wilson must show that "(1) [he] has been pursuing [his] rights diligently, and (2) that some extraordinary circumstance stood in [his] way." *Williams*, 594 S.W.3d at 194 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). As already explained, Wilson failed to pursue this action diligently. As soon as the initial summons was returned, Wilson could have attempted to serve Butzin at his Indiana address. His decision to wait some 17 months instead defeats his claim for equitable tolling.

And even if Wilson had acted diligently, no extraordinary circumstance prevented him from effectuating service. Perhaps such tolling is warranted when a clerk fails to issue a summons as the plaintiff requested, denying the plaintiff the opportunity to commence the lawsuit. *See Nanny v. Smith*, 260 S.W.3d 815, 816–17 (Ky. 2008). But Wilson faced no such impediment here.

10

Indeed, the clerk's office in this case issued at least four summonses at Wilson's behest. And after the first of these came back as undeliverable, the clerk's office posted Butzin's current address to the docket. Once Wilson asked the clerk's office to deliver a summons to Butzin's Indiana address, it did so in a matter of weeks.

We affirm.